FEDERAL OIL CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 27855. Promulgated November 5, 1931.

*Phil D. Morelock, Esq.*, for the petitioner.
*W. Frank Gibbs, Esq.*, for the respondent.

OPINION.

LANSDON: This is a proceeding under section 280 of the Revenue Act of 1926. The respondent has asserted that the petitioner is liable at law or in equity for the payment of deficiencies in income and excess-profits taxes due from the Federal Oil Company for 1920, 1921 and 1922, in the respective amounts of $174,926.64, $49,226.15, and $4,414.45. At the hearing the parties stipulated that in case the Board should find the petitioner liable as transferee of assets of the taxpayer, the correct tax liability is $9,345.81 for 1920 and no

deficiencies for 1921 and 1922. It is also stipulated that the petitioner received assets of the taxpayer having a value in excess of $9,345.81, plus interest thereon as provided by law, which leaves for determination only the question whether it is liable at law or in equity as transferee of assets of the taxpayer. Under the pleadings we are also called upon to determine whether assessment and collection of the deficiency asserted is barred by the statute of limitations.

The facts are presented in a stipulation, with exhibits attached thereto, which constitute the only evidence offered. In this report we shall summarize the stipulation and quote only the material portions of the exhibits, but the stipulation and exhibits are hereby incorporated by reference as a part of this report.

The petitioner is a corporation, organized on September 4, 1924, under the laws of Virginia, with an office at Eureka, Kans. Shortly thereafter it acquired the assets of the Federal Oil Company, a Delaware corporation, organized in 1911, which also had offices at Eureka, Kans. The parties agree that the original contracts by which such acquisition occurred have been lost, but that the purport thereof is reflected in the corporate minutes, which are attached as an exhibit to the stipulation of facts. The first mention of the Federal Oil Company in the corporate minutes of petitioner is under date of September 11, 1924, and as follows:

RESOLVED that the agreement heretofore made on behalf of this Corporation by R. C. Megargel & Co. with the Board of Directors and Stockholders of Federal Oil Company (a Delaware Corporation) that this Corporation, when organized, should acquire all the property and assets of said Federal Oil Company in exchange for two thousand, two hundred and thirty-three (2,233) fully paid and non-assessable shares of the preferred stock of this Corporation of the par value of One Hundred Dollars ($100) each and for fifty thousand, five hundred and ninety-two (50,592) fully paid and non-assessable shares of the common stock of this Corporation without par value, be and it hereby is approved and adopted for this Corporation.

RESOLVED that the property and assets of Federal Oil Company (a Delaware Corporation) to be sold and transferred to this Corporation as aforesaid, are in the judgment of the Board of Directors of this Corporation of the full and fair value, in current money of the United States, of Two Hundred Seventy Three Thousand, Eight Hundred Ninety-two Dollars ($273,892) *over and above the liabilities of said Federal Oil Company.*

RESOLVED that the proper officers of this Corporation be and they hereby are authorized and directed to issue and deliver to or upon the order of the said Federal Oil Company against a proper conveyance and delivery to this Corporation of all the assets and property of said Federal Oil Company, certificates representing two thousand, two hundred and thirty-three (2,233) fully paid and non-assessable shares of the preferred stock of this Corporation of the par value of One Hundred Dollars ($100) each and fifty thousand, five hundred and ninety-two (50,592) fully paid and non-assessable shares of the common stock of this Corporation without nominal or par value.

Under date of December 31, 1924, we find the following:

The President then stated that Federal Oil Company, a Delaware Corporation, *whose assets and liabilities* had been acquired by this Corporation, was called upon to pay its quarterly Dividend on its outstanding Preferred Stock; that the stockholders of Federal Oil Company would, *through an exchange of stock, become stockholders of this Corporation;* that the Directors of said Company had requested this Corporation to loan it $4,466.00 with which to pay the Dividend due January 1, 1925, * * *.

The books and accounts of the Federal Oil Company were closed as of September 30, 1924, with the following explanation entered in its general journal:

On October 1, 1924, the assets of the Federal Oil Company of Delaware were taken over and liabilities assumed by Federal Oil Corporation—Virginia—See entries on following page for final closing.

Some time prior to February 20, 1925, one Pouch, who had marketed some of the preferred stock for the Delaware Company, instituted a proceeding in the courts of Delaware to obtain an injunction against the dissolution of that company and the exchange of its stock for stock of the petitioner. On February 20, 1925, an agreement was entered into between the petitioner and Pouch which provides in part as follows:

The corporation has heretofore acquired all the property and assets of Federal Oil Company (a Delaware corporation hereinafter sometimes called "the Old Company") in exchange for 2,233 shares of the preferred stock of the Corporation of the par value of $100 each, and 50,592 shares of the common stock without par value of the Corporation. Said preferred and common stock of the Corporation is held in the treasury of the Old Company and the Corporation desires that the Old Company be dissolved and its assets consisting of said stock distributed among the preferred and common stockholders of the Old Company on the basis of 1 share of the preferred stock of the Corporation for each 20 shares of preferred stock of the Old Company of the par value of $5.00 each, and on the basis of 1 share of common stock of the Corporation for each 20 shares of the common stock of the Old Company.

The stockholders and directors of the Old Company have approved such basis of distribution to the stockholders of the Old Company but have been unable to effect such distribution on account of an action instituted by Pouch in the courts of Delaware entitled "Potter vs. Federal Oil Company, et al," in which suit an injunction against such distribution had been obtained.

\* \* \* \* \* \* \*

Now, THEREFORE, in consideration of the premises and of the mutual agreements herein contained, the parties hereto hereby agree as follows:

1. The Corporation agrees that it will not issue, or cause to be issued, any more of its authorized preferred stock than is now outstanding nor dispose of the 10,000 shares already issued and held in the Treasury until the 2,233 shares of its preferred stock to be distributed to the preferred stockholders of the Old Company or such part thereof as shall not have been converted into common stock prior to July 1, 1925, have been purchased, redeemed or retired by the Corporation.

\* \* \* \* \* \* \*

3. Pouch agrees that he will cause the action in the courts of Delaware entitled "Potter vs. Federal Oil Company, et al," to be promptly withdrawn and discontinued and the injunction obtained in said action to be vacated, and further agrees that he will recommend to such of his clients as are the holders of preferred stock of the Old Company that they consent to a dissolution of the Old Company and a distribution of its assets as recited in the preamble to this contract and the acceptance of preferred stock of the Corporation at par in Lieu of the preferred stock of the Old Company.

    \*        \*        \*        \*        \*        \*        \*

Pursuant to the above, 1,004 shares of preferred stock were purchased, at an average price of $80 per share, during 1925, 1926 and 1927.

On January 3, 1928, the petitioner filed an annual report for the Delaware Company with the Secretary of State of Delaware, in which it is stated:

In September, 1924, the Federal Oil Corporation bought the assets and liabilities of the Federal Oil Company, trading stock in the old company for stock in the new, therefore the Federal Oil Company is out of existence. They have no officers or business of any kind. We feel that they have no report to make.

By certificate dated January 13, 1931, the Delaware Company was declared dissolved as of April 1, 1929, for nonpayment of taxes.

Actual delivery of petitioner's stock to the Federal Oil Company occurred on or about January 1, 1925. Such stock was distributed by the Federal Oil Company to its stockholders on or after February 20, 1925.

By letter dated March 12, 1927, the respondent notified petitioner of its liability as transferee of the Federal Oil Company.

Section 280 of the Revenue Act of 1926 provides:

    \*        \*        \*        \*        \*        \*        \*

(b) The period of limitation for assessment of any such liability of a transferee or fiduciary shall be as follows:

(1) Within one year after the expiration of the period of limitation for assessment against the taxpayer; or

(2) If the period of limitation for assessment against the taxpayer expired before the enactment of this Act but assessment against the taxpayer was made within such period,—then within six years after the making of such assessment against the taxpayer, but in no case later than one year after the enactment of this Act.

The taxpayer's return for 1920 was due on March 15, 1921. Thereafter the respondent had five years, or until March 15, 1926, within which to determine, assess and collect any deficiency due from the taxpayer. See section 250 (d) of the Revenue Act of 1918. He had, therefore, until March 15, 1927, to assert liability as transferee against the petitioner. The sixty-day letter was issued on March 12, 1927, which is within the period of limitation.

The petitioner contends that it is not liable as a transferee, since the transaction by which it acquired the assets of the taxpayer in exchange for shares of petitioner's capital stock constituted a purchase for value, and that the taxpayer had assets, namely, stock of petitioner, with which to satisfy its liabilities. The petitioner argues that the stockholders of the taxpayer became transferees upon distribution of the stock to them and that the respondent should have proceeded against them.

Not having before us the contracts by which petitioner acquired the taxpayer's assets, it is difficult to say exactly what petitioner has agreed to do. The parties have stipulated that the corporate minutes correctly reflect the transactions as they occurred, and from the minutes we think it is clear that petitioner assumed all the liabilities. A corporation is liable for the debts and obligations of another when it expressly assumes such debts and obligations. Fletcher, Cyclopedia Corporation, vol. 7, §4982; 14a C. J. §3620; 7 R. C. L., p. 183. And it is held in many jurisdictions that an express assumption of the debts and obligations is unnecessary where the property of the old company is taken over in exchange for stock of a new corporation. *Gibson* v. *American Ry. Express Co.*, 193 N. W. 274; *Electric Products Co.* v. *St. Louis Theatre Supply Co.*, 273 S. W. 135; *Peters* v. *American Ry. Express Co.*, 256 S. W. 100; *Jackson* v. *Knights and Ladies of the Orient*, 167 Pac. 1046. Cf. *Northern Pacific Ry. Co.* v. *Boyd*, 228 U. S. 482; and *American Ry. Express Co.* v. *F. S. Royster Guano Co.*, 126 S. E. 678; affd., 273 U. S. 274.

We think the petitioner is liable for the taxes due from the Federal Oil Company for 1920.

Reviewed by the Board.

> *Decision will be entered finding petitioner liable as transferee for $9,345.81 due from the Federal Oil Company for 1920, with interest thereon as provided by law. There are no deficiencies for 1921 and 1922.*