ACACIA PARK CEMETERY ASSOCIATION, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 30210. Promulgated December 7, 1932.

*Leonard L. Cowan, Esq.*, for the petitioner.
*Arthur Carnduff, Esq.*, for the respondent.

OPINION.

Smith: In this proceeding the petitioner contends that the cost of the lots in each of the two sections to its cemetery was $100,000 greater than the amount allowed by the respondent in the determination of profits upon the sales. If this contention be denied, the petitioner contends that 10 per cent of the amount received from sales was received by it in trust and hence was no part of petitioner's net income.

We are of the opinion that there is no merit in the petitioner's contention that the cost of the lots sold was inclusive of an amount to be paid in by lot purchasers to provide for perpetual care. The cost of the land and improvements was not enhanced by the fact that the petitioner was to provide perpetual care. While we have held, under certain conditions, that the cost of improvements and additions legally bound to be made by contract when lots in a real estate development are sold may be added to the cost of the lots (*Milton A. Mackay*, 11 B. T. A. 569; *Birdneck Realty Corp.*, 25 B. T. A. 1084), it does not follow that future ordinary expenses and upkeep may be so treated. Expenses are deductible when paid or incurred. Even when it is known that expenses will be incurred in a subsequent year, it is not a ground for allowing a deduction in a previous year. The petitioner's contention upon this point is not sustained.

It is necessary to consider the petitioner's alternative contention that a portion of the sale price was received by the petitioner in trust and accordingly that a portion of it did not represent taxable income.

The Board has held in a number of cases that, where lots in a cemetery are sold with the provision that a portion of the sale price is to be set aside in a separate fund and the income used for perpetual care, the amount thus set aside is not taxable income. *Los*

*Angeles Cemetery Assn.*, 2 B. T. A. 495; *Greenwood Cemetery Assn.*, 2 B. T. A. 910; *Metairie Cemetery Assn.*, 4 B. T. A. 903; *Inglewood Park Cemetery Assn.*, 6 B. T. A. 386. A court has held to the same effect in *Portland Cremation Assn.* v. *Commissioner*, 31 Fed. (2d) 843. In the last named case the court stated:

It is true that a mere honorary obligation which one may perform or not at his will does not create a trust. But a trust may be created by parol, and its creation does not depend on the use of particular words of trust. *Chicago, etc., Ry. Co.* v. *Des Moines, etc., Ry. Co.*, 254 U. S. 196, 208, 41 S. Ct. 81, 65 L. Ed. 219. It may be inferred from facts and circumstances. Thus the owner and donor of personal property may create a perfect trust by his unequivocal declaration in writing or by parol that he himself holds such property in trust for purposes named. 26 R. C. L. 1182. And any words which indicate with sufficient certainty a purpose to create a trust will be effective in so doing. *Gutch* v. *Fosdick*, 48 N. J. Eq. 353, 22 A. 590, 27 Am. St. Rep. 473; *Faulds* v. *Dillon*, 231 Mich. 509, 204 N. W. 733. While the petitioner here may be said to have had control of the money which it had placed in the maintenance fund, diversion of that fund for corporation purposes or any purpose other than that designed by its promise to maintain the same, and the specific resolution of its board of directors to devote to that purpose 20 per centum of its receipts from sales, might be enjoined by a suit in equity as a violation of the trust agreement. The crucial question is, Did the petitioner's patrons possess the right to protect themselves and demand the preservation of the fund which the petitioner had covenanted with them to maintain and by its resolution had set apart for maintenance? That question is by the authorities answered in the affirmative. * * *

On brief the petitioner admits that the precise question presented for determination by this proceeding, so far as the published reports indicate, has never before been directly presented to this Board or the Federal courts; that in cases heretofore decided the question has been whether or not the fund set aside is a trust fund and, if so, whether under the peculiar facts in the case the funds were received in trust or placed in the trust fund.

So far as the record before us shows, there was never any corporate resolution adopted by the petitioner's stockholders or directors relative to the creation of a trust fund to provide for perpetual care. The president of the corporation testified, with reference to the establishment of a perpetual care fund in 1922, that:

Our arrangement was that we would establish a $100,000 fund for the first 25½ acres we opened up, and that, in selling lots, we were to set aside 10 per cent on the 25½ acres, to be sold at a minimum price or an approximate price of at least $155 a lot, which would figure up to approximately $975,000, and 10 per cent of that was to be set aside, making a minimum, of approximately $100,000 for the first 25 acres.

He instructed salesmen that they might inform prospective purchasers that a perpetual care fund was to be set up and that 10 per cent of the amounts received were to be placed in such fund. Two salesmen of the petitioner testified that they were so instructed

and that they advised prospective purchasers that 10 per cent of the amounts paid in on their lots would be set up in a perpetual care fund. The president testified that the $100,000 perpetual care fund was not set up as originally contemplated, for the reason that:

We needed the money for improvements necessary, that we were putting in, and we decided that, any time under the construction period, or any time during that time, as long as we had available lots for sale, that that fund would be intact, and that the proceeds from the sale would be charged and put in, up to the entire amount.

He further testified that 725 lots had been set aside for this purpose.

From a consideration of the entire evidence we are of the opinion that it does not establish the fact that any part of the amounts paid in by the lot purchasers was received by the petitioner in trust. The contract of sale provided that each lot should receive perpetual care. In 1924 a comparatively small amount was deposited with a trustee, the income of which was to be used for the perpetual care of the cemetery as distinguished from the care of lots sold, but only so far as necessary. Any excess of the income which might be received from such fund was available to the petitioner for any corporate purpose. The record does not show that any liability for perpetual care was recognized in the keeping of the petitioner's books of account, or that any action was taken by its stockholders or board of directors recognizing such liability. In this situation we are of the opinion that the petitioner has failed to establish that the money was received in trust, and that the proceeding at bar involves a situation substantially the same as was considered in *Springdale Cemetery Assn.*, 3 B. T. A. 223, and *Mt. Plymouth Corp.*, 25 B. T. A. 1201. In the last named case the facts were that a corporation selling lots from a tract in Florida gave assurance that each lot owner would for 21 years have the privileges of a golf course and club house in the tract, and stated that $100 of the price of each lot would be used to maintain such golf course and club house. We held that no trust existed in respect of the $100 received from the sale of each lot and that such $100 was within the corporation's gross income.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

TRAMMELL, dissenting: I agree that the portion of the purchase price of each lot which it was represented would be set aside for perpetual care should not be added to the purchase price of the lots, but can not agree that the entire selling price of the lots should be included in income.

The Commissioner in his determination has excluded from taxable income in each of the years here involved such amounts as were

actually set aside in a trust fund by the petitioner, upon the ground that such amounts were received impressed with the trust for perpetual care. The question here is whether the amounts received by the petitioner which were to be placed in such fund but were not actually placed there are to be excluded from income. In the sale of lots the contract provided, " The purchase price hereof shall include perpetual care," and salesmen represented to purchasers that a fund would be set up for this purpose and that 10 per cent of the purchase price of each lot would be set aside in a trust fund to be used exclusively for perpetual care. In my opinion, if a stated portion of the amounts received from the sale of lots was impressed with a trust, the petitioner received such amounts in trust, and if it did in fact commingle it with its other funds and did not set up a trust fund as agreed, that is a question of liability to lot owners on the part of the petitioner, with which we are not here concerned. If the petitioner should have misappropriated money received in trust and did not segregate it as agreed, the lot holders undoubtedly had their remedy. With this remedy, or whether the lot owners cared to exercise or resort to a remedy, we are not here concerned. With respect to the duty to keep trust property separate, the Tentative Draft No. 2 of the Restatement of the Law of Trusts of The American Law Institute, on p. 97, sec. 174, states as follows:

The trustee is under a duty to the beneficiary to keep the trust property separate from his individual property and ordinarily to keep it separate from other property not subject to the trust, and so far as it is reasonable he should see that the property is designated as property of the trust.

See also *Lannin* v. *Buckley*, 256 Mass. 78; 152 N. E. 71. However, I know of no authority to the effect that, if a trustee violates his duty as trustee, the trust is destroyed or there is no trust.

The facts indicate, however, that the funds were actually used for perpetual care as provided in the contract, but that they were commingled with the general funds of the petitioner, except with respect to the small amount of trust to the extent of $6,500 set up in 1924.

I think that the facts in this case, on account of the provision contained in the contract with the lot purchasers, the representations made by the salesmen of the lots, and the published literature with respect to the perpetual care fund, are of such a character as to impress a definite proportion of the funds received from lot owners with a trust. It was clearly understood by the purchasers of lots that 10 per cent of the total purchase price of each lot was to be devoted to a trust fund. When they paid their money in, they paid it with these facts and representations before them. It seems clear that they would have had a remedy to have enjoined the misapplication of the specified portion of the fund to any other use than for

perpetual care if they had seen fit to do so, or they could have had any other remedy afforded to a beneficiary for the failure on the part of a trustee to perform his duty according to the trust agreement.

I think that this case is governed by our decision in the case of the *Los Angeles Cemetery Assn.*, 2 B. T. A. 495; *Greenwood Cemetery Assn.*, 2 B. T. A. 910; *Metairie Cemetery Assn.*, 4 B. T. A. 903; *Portland Cremation Assn.* v. *Commissioner*, 31 Fed. (2d) 843; *Inglewood Park Cemetery Assn.*, 6 B. T. A. 386.

In the *Inglewood Park Cemetery Assn.* case the facts were that salesmen employed by the petitioner were instructed to call the attention of all purchasers of lots to the provision relating to perpetual care. Each deed conveying title to lots contained a perpetual care guarantee that 25 per cent of all receipts from the sale of lots was transferred to the perpetual care fund at the end of each month. The perpetual care fund was deposited in a special bank account designated "Trust Fund for Perpetual Care." It is to be observed in that case that the amount when received by the petitioner was commingled with its own funds and that a portion of the receipts from the lot sales was not transferred to the trust fund until the end of each month. Certainly the transfer to a fund after the receipt thereof is not sufficient in and of itself to create the trust relation or to impress a trust upon the fund at the time of its receipt. If a taxpayer sets up a trust fund of its own funds which it had previously received, clearly this would not be sufficient to impress a trust thereon retroactively, but we held in that case that a portion of the funds received was impressed with the trust and did not constitute income when received. If it was impressed with a trust at the time received, the trust relation is then established and whether at the end of the month it is set aside into a special trust fund would add no strength to the trust relationship. In the case at bar there were representations made and the contracts of sale were substantially identical with the representations and contracts of sale in the Inglewood Park Cemetery Association.

In the case of *Los Angeles Cemetery Assn.*, *supra*, reliance was placed on a provision of the California Civil Code to the effect that any cemetery corporation or association under contract for the perpetual care of certain lots in the cemetery is expressly forbidden to use the funds received for the perpetual care for any other purpose. There is a similar statute in Illinois, to wit, ch. 21, ¶ 51, sec. 4 of Cahill's Illinois Revised Statutes, relative to cemetery associations, in effect during the taxable years, as follows:

¶51. Trust fund.] §4. The board of directors of such cemetery society, or cemetery association, or the trustees of any public graveyard, may set apart such portion as they see fit of the moneys received from the sale of the lots

in such cemetery or graveyard, which sums shall be kept separate from all other assets as an especial trust fund, and they shall keep the same invested in safe interest or income paying securities, for the purpose of keeping said cemetery or graveyard, and the lots therein, permanently in good order and repair, and the interest or income derived from such trust fund shall be applied only to that purpose, and shall not be diverted from such use.

In the case of *Evergreen Cemetery Assn. of Chicago*, 21 B. T. A. 1194, we held that amounts received by the petitioner in that case for perpetual care were received in trust and were not to be included in taxable income. Our opinion in that case was based upon " The representations made by the petitioner in its advertising matter, contracts and deeds as to the ' perpetual care fund,' taken in connection with the positive and uncontradicted testimony of the treasurer of the fund touching the same  *  *  *." In that case, however, the fund was actually set up. We have similar or even stronger representations and more specific statements and clearer testimony in this case with respect to the paying in of a definite portion of the price of each lot.

In the *Portland Cremation Assn.* case, *supra*, decided by the Circuit Court of Appeals, the court said: " In the case at bar the representations went no further than to say that a portion of the purchase price *would be placed* in a maintenance fund." The court further said:

In short, the decisions of the Board of Tax Appeals seem to narrow the question here involved to this: That, in case the taxpayer specifies in its representations to purchasers that its covenant to maintain is backed by a permanent fund *to be created* by placing aside either all or a named portion of the purchase price received on each sale, the fund will be a trust fund, but, if in the representations to purchasers the portion of the money *so received and so* to be set aside is left unspecified, there will be no trust or obligation enforceable in equity but only a contract, breach whereof will be remediable only by an action at law. This seems to us an unsubstantial distinction. We cannot agree that the fund so set aside by the petitioner here is not essentially a trust fund. The deeds it gave to purchasers contained a covenant to the grantee and his heirs that the petitioner would maintain the niche or vault forever. All sales were made with the representation that said covenant was guaranteed by a permanent maintenance fund and that a portion of the purchase price paid by each purchaser would be placed in that fund, and that the fund could not and would not be used for any other purpose. [Italics ours.]

The court held on the facts in that case that the money was received in trust and was not to be included in the taxpayer's income. It is to be observed that the court placed its decision on the "representations that a portion of the purchase price would be placed in a maintenance fund."

The court further said, "And any words which indicate with sufficient certainty a purpose to create a trust will be effective in so doing."

In the case of *Spring Canyon Coal Co.* v. *Commissioner*, decided by the Circuit Court of Appeals, Tenth Circuit, 43 Fed. (2d) 78, the petitioner corporation had set aside out of its funds a reserve for the payment of workmen's compensation insurance. The court held that amounts added to that reserve fund were to be included in taxable income. The court further said, "the present case is not analogous to a trust set up by an employer to assist employees in sickness or old age, where he is under no obligation so to do; neither is it governed by *Portland Cremation Association* v. *Commissioner*, * * * where a cemetery corporation, in consideration of the purchase of a lot, agreed to pay a portion of the price into a perpetual maintenance fund."

The situation presented in this case is materially different from the case of *Springdale Cemetery Assn.*, 3 B. T. A. 223, and similar cases where a reserve fund is set aside for perpetual care of lots. When the money from the sale of lots is not impressed with a trust when received, it is not important that a reserve is set up or that a trust is afterwards set up. The setting up of a reserve out of income does not affect income and makes no income exempt. Nor does the creation of a trust out of income already received, if the income when received was not impressed with a trust, relieve the tax burden which falls on the income received. But, if when some money is received a portion of it is impressed with a trust, a different situation exists. Such portion so impressed is not income, and it remains impressed with the trust regardless of whether it is improperly commingled with other funds.

Nor do I think that it is important that the trust fund here was not mandatory under the Illinois statute, but was merely permissive. Manifestly trusts can be created by the voluntary action of the parties. As a rule trusts are so created. I can not agree in this respect with the language of the *Springdale* case, *supra*, which distinguishes a mandatory from a permissive trust.

Nor do I think it is of importance whatever that the board of directors and the stockholders took no formal action. There can be no doubt, it seems to me, that the corporation is bound by representations of its authorized officers, which statements are corroborated by published literature, especially when concededly the corporation was permitted by law to do the very things which it was represented would be done. Lack of authority certainly would have been no defense if the corporation had been sued as a trustee by lot owners.

From a consideration of the evidence in this case and the authorities, it is my opinion that 10 per cent of the amount received as the selling price of each lot was impressed with a trust for perpetual

care when received, and should not be included in the taxable income of the petitioner.