RESTHAVEN MEMORIAL CEMETERY, INCORPORATED, FORMERLY REST-HAVEN MEMORIAL TRUST, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 51743. Promulgated April 13, 1934.

*Frank J. Albus, Esq.,* and *W. P. Hollinger, C.P.A.,* for the petitioner.

*Bernard D. Hathcock, Esq.,* and *John M. Morawski, Esq.,* for the respondent.

386

OPINION.

SEAWELL: The record shows that on November 21, 1927, there was incorporated under the laws of Kentucky the Resthaven Memorial Cemetery, Inc., the petitioner herein, which by deed of January 10, 1928, acquired the assets of the Resthaven Memorial Trust and issued therefor its capital stock and agreed in writing to pay the debts of the trust. Having acquired all the assets and assumed all the liabilities of the Resthaven Memorial Trust and having received, as stated herein, the deficiency notice and filed petition and amended petition as heretofore set forth, petitioner, in our opinion and we so hold, is properly before the Board as a transferee of the Rest-

haven Memorial Trust. See *Burnet* v. *San Joaquin Fruit & Investment Co.*, 52 Fed. (2d) 123; *Commissioner* v. *New York Trust Co.*, 54 Fed. (2d) 463. And as such transferee, petitioner, in the circumstances detailed in our findings of fact, is liable for whatever income tax may be due from the Resthaven Memorial Trust for the fiscal year in issue. *Federal Oil Corp.*, 24 B.T.A. 622, 626, and authorities therein cited. What the correct amount of the tax so due is, if any, we will consider in discussing the errors assigned.

(1) Failure of the respondent to add to the cost of petitioner's land an amount of $3,000 per acre, or at the rate of $20 per burial lot (there being 150 such lots to the acre), to provide a trust fund for perpetual care of the cemetery is the first error assigned. The agreement of January 26, 1927, relative to such trust fund was not entered into with the purchasers of burial lots by the trustees of the Resthaven Memorial Trust, but by the latter with a corporation, the Resthaven Memorial Park & Cemetery Association, and the trustees were not obligated thereby to set aside 20 percent, or. any other amount of money received from the sale of lots, to provide for a perpetual care fund until they should have first received from such sales the sum of $75,000. The record fails to show that any certain part or percentage of the amounts paid by purchasers of lots was paid by them with the understanding on their part that the same was paid and would be received by the trustees of the Resthaven Memorial Trust as a trust fund for perpetual care of the cemetery. The record shows that by the termination of the fiscal year ended November 30, 1927, there had been set aside for the trustees of the perpetual care endowment fund, in the manner indicated in our findings of fact, only $769.55. The owners were entitled (under the agreement with the Association) to receive $75,000 from the sale of lots in the Resthaven Memorial Park and Cemetery before the 20 percent provision of the agreement was to become operative and it is not shown that any more than the $769.55 should have been set aside for the trustees of the perpetual care endowment fund.

Under the circumstances disclosed by the record, we are of the opinion and hold that the respondent did not commit error in failing to add to the cost of petitioner's land an amount of $3,000 per acre to provide a trust fund for perpetual care of the cemetery. In determining profits on the sale of lots in the year in issue there may not be added to the cost of lots sold a sum representing an amount which may have been merely intended to be set aside for perpetual care. *Acacia Park Cemetery Assn., Inc.*, 27 B.T.A. 233; affd., 67 Fed. (2d) 700.

(2) The petitioner in its second assignment of error asserts that respondent erred in not increasing the initial cost of the land (sec-

tions 1 to 6, inclusive) by the amounts actually expended on its development up to and including expenditures to November 30, 1933, to wit, $142,918.98.. The respondent in his amended answer denies error in the regard asserted, but, on the other hand, affirmatively alleges that he did err in his determination of tax deficiency in that in the cost of land he included the development expense incurred in 1928, after the taxable year, in the sum of $40,031.48 and that, therefore, the deficiency in tax should be increased by the correction of this error. Neither the development expense of $40,031.48 in 1928 nor any thereafter is shown to have been either incurred or borne by the Resthaven Memorial Trust and did not increase the initial cost of the land to it. We are of the opinion and hold that respondent did not err as asserted by petitioner, but did err as he affirms, and that the deficiency asserted should be increased by excluding $40,031.48 as part of the cost of the lots to the Resthaven Memorial Trust.

(3) The record shows that before the end of the fiscal year in issue there was a meeting of the trustees and beneficiaries of the Resthaven Memorial Trust on November 9, 1927, at which it was agreed and resolved by them to dispose of all its assets to a separate entity, a corporation to be formed, which would assume and pay all the debts of the Resthaven Memorial Trust. The proposed corporation, the Resthaven Memorial Cemetery, Inc., the petitioner herein, was incorporated on November 21, 1927, and to it by deed dated January 10, 1928, were conveyed all the assets of the Resthaven Memorial Trust and all the latter's liabilities were assumed by the corporation, which issued its capital stock to the Resthaven Memorial Trust, etc., as set forth in our findings of fact.

In view of the action taken and the resolutions adopted by the trustees of the Resthaven Memorial Trust prior to the close of the fiscal year in issue, it can not, in our view of the matter, reasonably be presumed that the trust itself contemplated or intended future development of the land, which it was preparing to dispose of absolutely, and definitely so determined on November 9, 1927. While the record indicates that the trustees of the Resthaven Memorial Trust had, in a sense, contemplated the construction on the land of an elaborate water system costing in excess of $20,000 and an administration building costing about $25,000, no definite or even approximate date had been determined at which such developments would be made, and such future development by the Resthaven Memorial Trust appears from the record to have been abandoned, so far as any action by it was concerned, when it disposed of the land to the corporation. We are of the opinion and hold that the respondent did not commit error with respect to the disallowance of future development expense claimed by petitioner.

(4) In reference to the fourth assignment of error, the record fails to show that there were ever any trustees appointed for the perpetual care endowment fund. While the evidence shows there was kept in the office of the petitioner a record of the amounts which should have been collected under the terms of the agreement between the owners and the association by the three trustees of the fund, who were to keep the principal of the fund inviolate and constantly invested in certain securities, etc., as the agreement provided, it fails to show that any trustee so acted and dealt with any perpetual care endowment fund or that any such fund was actually in existence, though there was a record showing what money was realized from lot sales for such fund. In the circumstances, we are of the opinion and hold that the respondent did not commit error as herein assigned and the petitioner's contention is not sustained.

(5) Our determination on prior assignments of error being in favor of the respondent, there is not in our opinion, and we so hold, any sufficient evidence in the record showing the respondent failed to carry forward a proper net loss for the year 1926 as alleged by the petitioner, and, therefore, such assignment of error is not sustained.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*