# T. H. Symington & Son, Inc., Petitioner, et al.,[1] v. Commissioner of Internal Revenue, Respondent.

Docket Nos. 48786, 48789, 48890, 62161, 62228, 62229, 62234.
Promulgated March 26, 1937.

---

[1] Proceedings of the following petitioners are consolidated herewith: Elsie J. Symington; W. Stuart Symington and Francis F. Symington, Executors of the Estate of Emily H. Symington, Deceased; Elizabeth L. Symington; The Patapsco Corporation; and the Magothy Corporation.

*Valentine B. Havens, Esq., Charles B. McInnis, Esq.,* and *John F. Thomas, Esq.,* for the petitioners.

*Nathan Gammon, Esq.,* and *Francis S. Gettle, Esq.,* for the respondent.

716

OPINION.

BLACK: 1. The question presented by this issue is whether or not Magothy realized a gain of $39,085 in 1924 upon the redemption in that year of 10,000 preferred shares in the Locke Insulator Corporation. Magothy reported that amount of gain in its 1925 return, but the respondent determined that the gain was income for 1924. The petitioner now contends that no gain was realized in the transaction, though it does not dispute that, if any taxable gain did result, it was income for 1924. The amount received by Magothy is not in controversy, but the cost of the redeemed shares is. The facts pertaining to the issue are set forth in paragraph (68) of our findings.

The shares in question were part of the assets acquired by the Magothy Corporation in 1924 from the Delaware company, the facts of which are set forth in paragraphs (10) to (24), inclusive, of our findings. As consideration for all of the assets so acquired, Magothy paid $500,000 and assumed all of the Delaware company's liabilities, except such as were assumed by the Maryland company, also a party to the transaction, including the liability to retire the outstanding preferred shares and bonds of the Delaware company. The transfer of such of the assets of the Delaware company as were acquired

by Magothy was effected on December 17, 1924. The parties agree that the transaction constituted an outright purchase by Magothy and not a statutory reorganization within the meaning of the applicable revenue acts. The shares were redeemed on December 30, 1924. As the shares had not been transferred to Magothy on the books of the Locke Insulator Corporation, payment of the redemption price was made by the Locke Insulator Corporation to the Delaware company, which in turn made payment thereof to the Chase National Bank, to be applied in reduction of the loan obtained by Donald Symington, referred to in paragraph (18) of our findings, for the benefit of Magothy. In that respect it must be presumed that the Delaware company acted in accord with instructions of Magothy, since the proceeds of the redemption were the property of Magothy and not of the Delaware company.

The foregoing facts disclose a completed redemption in 1924 of the Locke Insulator preferred shares for cash. It follows that any gain upon the exchange was realized in 1924 and is taxable as income for that year; and this we understand is not now disputed by the petitioner. The petitioner argues, however, that "the entire transaction must be viewed as a purchase by Magothy for the sum of $500,000 of whatever assets remained after the liquidation of all liabilities, and any assets which were liquidated during the course of the general liquidation did not give rise to any profit or loss but merely tended to increase or reduce the cost to Magothy of the assets finally taken over." Stating the proposition more simply and in terms of its ultimate effect, it is that the liabilities of the Delaware company assumed by the Magothy Corporation should be offset against the proceeds from dispositions of the acquired assets and none of such proceeds subjected to tax, and that the excess of such proceeds over the assumed liabilities should be added to the remaining assets and the total thereof regarded as having been purchased for $500,000. This we think is not a correct theory of income taxation. Not only does it resort to the use of improper bases for computing gains and losses upon the dispositions of assets made in the period of liquidation of the assumed liabilities, but the logical result of their use is to project realized gains into the computation of net income of later accounting periods when they were not realized. "It is well settled that where property is acquired en bloc or en masse and subsequently sold in lots or parcels, a computation of gain or loss must be made upon each separate sale and the result reported in the tax return and not held in abeyance or suspense until the entire cost of the property is recovered." *Bancitaly Corporation*, 34 B. T. A. 494, and cases cited therein. The rule is applicable to the redemption of the Locke Insulator shares in this case, and the

gain or loss upon that redemption must be computed upon the cost basis for those shares and recognized in computing net income for 1924.

In computing the gain to Magothy upon the redemption, the respondent used a cost basis of $1,000,000, which was the par value of the shares. Petitioner contends that the cost of the said shares was not less than $1,039,850, the amount received in the redemption thereof.

Magothy agreed to pay a stated consideration for the acquired assets—$500,000 in cash and payment of such of the liabilities of the Delaware company as were not assumed by the Maryland company. Each of the acquired assets must bear its fair share of the cost represented by that consideration, and, when determined, that share is the basis for computing gain or loss upon any later disposition of that particular asset. Based upon asset and liability values on the books of the Delaware company, the total consideration paid by Magothy exceeded the book value of assets by $260,286.90. The respondent found the excess to be $290,346.19, but that included items that did not appear on the Delaware company's books, and he ascribed the whole amount of that excess as cost of the shares in the Symington Corporation, which were acquired from the Delaware company at the same time as the shares in the Locke Insulator Corporation and which were carried on the books of the Delaware company at $1,000. The question is whether or not any part of that excess may be ascribed as cost of the Locke Insulator preferred shares, and we are unable to answer that because of the lack of sufficient evidentiary facts upon which to base a conclusion.

The petitioner contends that $39,085 of the excess should be allocated to the redeemed shares, fixing the cost of those shares at $1,039,850. Its sole justification for this is the fact that the shares were actually redeemed on December 30, 1924, 13 days after their acquisition by Magothy, for $1,067,500. However, the situations were different on the two dates. On December 30, 1924, the shares were called for redemption at 105 percent of par, plus accrued dividends, and there was an accrued liability on the part of the Locke Insulator Corporation to pay the redemption price thereof. On December 17, 1934, the date of acquisition, the shares had not been called, and there is nothing in the record that indicates that their call was even contemplated at that time. There is no direct evidence as to the fair market value of the shares on that date. The share certificates are not in evidence, so that we know nothing about the terms of issue, the dividend rate, or when and how the shares were redeemable. We have no evidence as to the financial status of the Locke Insulator Corporation, the value of the assets represented by

these shares, the corporate earnings, or the dividend history in respect of these shares. In short, we have no evidence upon which we can make an independent determination of their fair market value at the date of acquisition. We have no evidence which would justify us in overturning the cost of $1,000,000 allocated by the respondent to these shares.

On this issue the respondent's determination is sustained.

2. The issue here is whether or not Magothy is liable for the 25 percent penalty prescribed by section 3176 of the Revised Statutes, as amended by section 1003 of the Revenue Act of 1924, for failing to file its 1924 income tax return within the time prescribed by law.

Magothy came into existence on December 2, 1924. It succeeded, by purchase, to certain of the assets and business of the Delaware company on December 17, 1924. It transacted business in the period December 2 to December 31, 1924, from which it derived a gain of $39,085. Its first taxable year was the period December 2 to December 31, 1924. It filed its 1924 return on April 3, 1935.

Section 239 (a) of the Revenue Act of 1924 requires every corporation subject to the income tax to make a return of its income, and allowable deductions and credits. By section 241 (a), the calendar year return of a corporate taxpayer must be made on or before the 15th day of March of the succeeding year. The 1924 return of Magothy therefore was made more than ten years after the time prescribed by law. Section 3176 of the Revised Statutes, as amended, provides, *inter alia*, as follows: "In case of any failure to make and file a return or list within the time prescribed by law, or prescribed by the Commissioner of Internal Revenue or the collector in pursuance of law, the Commissioner shall add to the tax 25 percentum of its amount, except that when a return is filed after such time and it is shown that the failure to file it was due to a reasonable cause and not to willful neglect, no such addition shall be made to the tax."

In explanation and as exculpatory circumstances of the failure of Magothy to make and file its return on time, the former vice president and treasurer of that corporation testified as follows: "I was an officer of the Magothy Corporation shortly after the first of the year 1925 and in preparing its accounts, opening entries, etc., I did not take into consideration that there were, possibly, some entries of Magothy in the one month of December, 1924. As a matter of fact, I never discovered the entries or any business of Magothy in the month of December, 1924, the month of its incorporation. Further, the only items of account that I had at that time were the opening entries and it did not occur to me that I should have filed a return for say the 28 days in the month of December, 1924, because I did not feel that there were any transactions during that month

regarding the Magothy." We are unable to find in this testimony any reasonable cause for the failure to file the return on time. The fact that it did not occur to the responsible officer that a return should be filed, because he "did not feel that there were any transactions" during the short period in 1924 that the corporation was in existence, is not a mitigating circumstance. Magothy was required by law to make and file a return, regardless of the amount of its income or lack of income. If it was believed that Magothy had not transacted any business and that it had no income from any source, it could have been relieved of the necessity of making a return, upon presentation of the facts to the collector. But in the absence of a proper showing to the collector, it was required to make a return. Art. 621, Regulations 65. Furthermore, the deficiency notice for 1924 was mailed to Magothy on April 4, 1930, five years before it finally made and filed the return. Then it acted only to avoid the mandatory penalty.

The respondent's action in levying the 25 percent penalty for delinquency in filing the return of Magothy for 1924 is sustained. Cf. *Charles E. Pearsall & Son*, 29 B. T. A. 747; *Rafael Sabatini*, 32 B. T. A. 705; *George S. Van Schaick*, 32 B. T. A. 736.

3. The question raised by this issue is whether or not the assessment and collection of the deficiency against Magothy for 1925 was barred by the statute of limitations at the time the assessment was made. The facts pertaining to the matter are set forth in paragraphs (72) to (76), inclusive, of our findings. Admittedly, the question depends for its solution upon whether or not the consents set forth in the findings are valid and binding upon the taxpayer.

Magothy was dissolved on March 15, 1928. The first consent bears date of January 11, 1929, and purports to extend the statutory period for the assessment of any tax due for 1925 to December 31, 1929. That consent need not be considered further, because the assessment was not made until March 12, 1930, and the deficiency notice was not mailed until April 5, 1930, both of which dates fall beyond the permissible assessment period as extended by that consent. The second consent bears date of November 18, 1929, and purports to extend the statutory period for the assessment of 1925 taxes to December 31, 1930. If the second consent was valid, it was sufficient to extend the period beyond the date of actual assessment. A consent given after the statute has expired is valid and effective. *Helvering* v. *Newport Co.*, 291 U. S. 883. This second consent was executed in the name of Magothy by L. A. Townsend, vice president and treasurer, and contains an imprint of the corporate seal.

The petitioner contends that Magothy, upon dissolution on March 15, 1928, ceased to exist and could thereafter exercise no corporate function; that its officers became *functus officio*, without authority

to perform any act in the name of the corporation, and that therefore the purported waivers executed by the former vice president and treasurer of the corporation were invalid and void. It is further contended that none but the directors, as trustees in dissolution and liquidation, were empowered to act for or on behalf of Magothy; that the trustee powers of the directors could only be exercised in concert and not individually; that the former vice president and treasurer of the corporation, who was also a director and trustee, had no authority from his cotrustees to execute the waivers; and that, therefore, the waivers executed by him are invalid and void and not binding upon the corporation.

Respondent in his answer affirmatively alleges that at all times material herein L. A. Townsend was a general officer and a director of Magothy, and a trustee of its creditors, stockholders and members, with full power to wind up and settle the affairs of the corporation and, as such general officer, director and trustee, executed income and profits tax waivers for and in behalf of the corporation from time to time under its corporate seal, by virtue of which the Magothy Corporation consented in writing to postponement of the assessment and collection of income taxes due from it for the taxable year involved in this appeal until a time which had not expired when the jeopardy assessments of which it was notified by letter April 4, 1930, were made against it; that the aforesaid consents in writing were duly accepted and acted upon by the respondent, and the petitioner may not now be heard to say they were given without authority, even if such were the case, which is expressly denied.

Article 23, sections 95 and 96, of the Maryland Code, 1924, provides as follows:

(95). Upon dissolution of any corporation of this State in any manner otherwise than by judicial proceedings, and until other persons shall be appointed as receivers by some court of competent jurisdiction, the directors at the time of dissolution shall become and be trustees for the creditors, stockholders, and members of the corporation so dissolved. They shall take title to its assets, real and personal, and shall have full power to wind up and settle its affairs, to sue for and collect its assets and to pay its debts; and they shall divide among the stockholders or members, the money and other property that shall remain after the payment of the debts and necessary expenses; and the said trustees shall be jointly and severally liable to the creditors, stockholders and members of such corporation to the extent of its property and effects that shall come into their hands.

(96). The dissolution of a corporation shall not relieve its stockholders or other officers from any obligations and liabilities imposed on them by law; nor shall it abate any pending suit or proceeding by or against the corporation, and all such suits may be continued with such change of parties, if any, as the court in which the same are pending shall direct * * *.

We think the waiver in question was valid and served to remove the bar of the statute of limitations. *Monarch Mills* v. *Jones*, 59 Fed.

**742**

(2d) 502. In that case the taxpayer was the Lockhart Mills, a South Carolina corporation, which was dissolved May 18, 1919. Waivers were signed and filed in 1923. These waivers were signed in the name of the dissolved corporation by its treasurer. The court upheld the validity of the waivers and its opinion, among other things, said:

Under the statutes of South Carolina, corporations which have been dissolved are continued as bodies corporate to prosecute and defend suits and settle their affairs and the directors become trustees for this purpose. The courts quite generally have upheld the validity of waivers executed by the directors of dissolved corporations during the period in which corporate existence for purposes of liquidation is usually continued by state statutes [citing cases].

The court said in the concluding part of its opinion:

It was to the interest of the taxpayer to have a careful and deliberate examination of its accounts so that the correct amount of its tax could be ascertained; and it is noteworthy that the amount of the tax, as first determined, was subsequently reduced. The execution of the waivers was merely an incidental transaction in the liquidation of the corporate affairs, well within the powers conferred by law.

To the same effect as *Monarch Mills* v. *Jones, supra,* are *Commissioner* v. *Angier Corporation,* 50 Fed. (2d) 888; certiorari denied, 284 U. S. 673; and *Commissioner* v. *South Penn Oil Co.,* 68 Fed. (2d) 420. See also *Keener Oil & Gas Co.,* 32 B. T. A. 186. In support of its contention that the waiver is invalid petitioner strongly relies upon *Commissioner* v. *Bryson,* 79 Fed. (2d) 397, affirming memorandum opinion of the Board.

We think the facts of that case are distinguishable from those present in the instant case. In the *Bryson* case the waiver was not signed in the name of the corporation, but by "Elmer D. Bryson, former Sect. of the Bryson-Robison Corp., Taxpayer." When the waiver was forwarded to the Commissioner, Bryson notified the Commissioner that the corporation was dissolved and expressly disclaimed any authority to act for it.

On these facts the court decided that the waiver was invalid to bind the corporation. The majority opinion said in part:

* * * Neither on its face therefore, nor in the light of the accompanying letter from the respondent's attorney, can the document be regarded as a valid waiver. It is signed by a former secretary of the corporation. It does not bear the corporate seal. The attorney's letter emphatically puts the Commissioner on notice that the respondent considers himself only a former officer of the corporation and that he will not presume to act for it.

In the instant case L. A. Townsend, who executed the waiver in behalf of the dissolved corporation, was its vice president and treasurer at the time the corporation was dissolved, and he was also a director. At no time did he notify the Commissioner or claim that he was not acting within the scope of his authority in signing the waiver. On the contrary the evidence shows that the waiver in

question was presented to the Commissioner in the regular way to secure a postponement of an assessment against the corporation while the Commissioner continued to examine the question of the corporation's tax liability for the year in question. As said by the court in *Monarch Mills* v. *Jones, supra,* "The execution of the waivers was merely an incidental transaction in the liquidation of the corporate affairs, well within the powers conferred by law."

We sustain the validity of the waiver and deny petitioners' plea of the bar of the statute of limitations.

Having held that the waiver in question was valid to bind the corporation, it becomes unnecessary to rule upon respondent's plea of estoppel.

4. The ultimate question to be determined in deciding this issue is the amount of the gain realized by Magothy upon the liquidation of the Symington Corporation in 1925. However, the parties have narrowed the issue to the question of the cost to Magothy of its 10,000 shares in the Symington Corporation. They have stipulated the book and fair market values of the assets of the Symington Corporation which Magothy received in the liquidation. The facts pertaining to the issue are set forth in paragraphs (10), (12), (17), (19), (21) to (24), (29) to (33), and (65) to (67) of our findings.

The respondent determined the cost of the said shares was $290,-346.19. The petitioner contends that the respondent's figure of cost should be increased by $939,136.80.

(a) On November 25, 1924, Charles J. and Donald Symington agreed to purchase all of the assets and business of the Delaware company, paying therefor $5,000,000 in cash and assuming all of the outstanding liabilities of that company. On December 2, 1924, Donald Symington organized the Magothy Corporation. On December 5, 1924, the two Symingtons agreed to a division of their rights under the purchase contract of November 25, 1924. Under that agreement, Donald Symington was given the right to purchase certain of the assets of the Delaware company in consideration of his assuming all of that company's liabilities not expressly assumed by Charles J. Symington. On December 12, 1924, Donald Symington turned over to Magothy all of his rights to purchase the assets of the Delaware company, as defined and limited by the two agreements of November 25 and December 5, 1924, the sole consideration being that Magothy would assume all of Donald Symington's liabilities under those agreements. On December 15, 1924, the Symingtons referred to in paragraphs (14) and (26) of the findings agreed among themselves, in writing, to exchange their 30,000 shares in the Delaware company for 30,000 shares in Magothy. Charles J. and Donald Symington directed the Delaware company to transfer certain of its assets to Magothy, upon payment by the latter of $500,000. It is clear from

the record, as a whole, that in all of the foregoing transactions Donald Symington was acting for and on behalf of the Symingtons, who agreed to exchange their shares in the Delaware company for shares in Magothy. The transfer of the Delaware company's assets and payment therefor were effected on December 17, 1924. On January 7, 1925, the Symingtons exchanged their 30,000 shares in the Delaware company for 30,000 shares in Magothy, on a share for share basis. No other shares were ever issued by Magothy. Among the assets transferred by the Delaware company to Magothy were the 10,000 shares in the Symington Corporation in question. Those shares were carried on the books of the Delaware company and entered on the books of Magothy at a figure of $1,000. Based upon asset and liability values on the books of the Delaware company, the total consideration paid by Magothy exceeded the assets by $260,-286.90. The respondent found the excess to be $290,346.19, but that included asset and liability items that did not appear on the Delaware company's books, and he ascribed the whole amount of it as the cost of the aforesaid shares in the Symington Corporation. On March 1, 1925, the Symington Corporation was dissolved and, in the liquidation of the latter, Magothy received total assets of the fair market value of $1,622,057.36. At that time, the Symington Corporation owed Magothy $353,750 on account of loans and interest. The respondent determined a gain of $977,961.17 to Magothy upon the liquidation of the Symington Corporation. There was little or no change in the fair market value of the assets of the Symington Corporation between December 12, 1924, when Donald Symington assigned his rights to purchase assets of the Delaware company to Magothy, and March 1, 1925, when the Symington Corporation was dissolved.

From the foregoing facts it is obvious that the rights assigned and transferred to Magothy by Donald Symington had a very substantial value as of the date of the transfer. Because of that assignment and transfer, which included the right to purchase the 10,000 shares in the Symington Corporation, Magothy, upon the liquidation of the Symington Corporation some two and a half months later, came into possession of assets having a fair market value of $1,622,057.36. The only indebtedness standing against those assets was the Symington Corporation's indebtedness of $353,750 to Magothy. If the net of these two figures, $1,268,307.36, be substituted for the Delaware company's book figure of $1,000 for the Symington Corporation's shares, the value of the Delaware company's assets acquired by Magothy would exceed the consideration paid, even upon the basis of respondent's adjustment, by $977,961.17. And this excess was real, because it was actually realized in the liquidation of the acquired assets. Donald Symington testified that

the purchase rights turned over to Magothy had a fair market value, as of the date of transfer, of $900,000. We think the facts of record support that opinion, and we have made an ultimate finding in accordance therewith.

The petitioner contends that these purchase rights represent a paid in surplus to Magothy of $900,000; that the rights were dissipated by the purchase of the Delaware company's assets and their cost of $900,000 was merged with and became a part of the cost of those assets; and that the whole cost of the rights is ascribable as cost of the shares in the Symington Corporation.

Assuming, but not deciding, that the petitioner's contentions are correct, still, as we interpret the governing statutory provisions, the value of the purchase rights may not be included in the basis of the shares for computing the gain to Magothy upon liquidation of the Symington Corporation. Sections 204 (a) (2) and (8) and 203 (b) (4) of the Revenue Act of 1924 [2] are controlling. Donald Symington and his associates acquired the rights to purchase the Delaware company's assets by contract directly made with that company and without any cost to them. Those rights had no basis in their hands. They conveyed those rights to Magothy, all of whose outstanding shares they owned, for the sole consideration that Magothy assume all liabilities in respect of those rights. As they exchanged their shares in the Delaware company for shares in Magothy on a share for share basis, it is clear that, as between themselves, their proportional interests in the assets of the Delaware company were pre-

---

[2] Sec. 204. (a) The basis for determining the gain or loss from the sale or other disposition of property acquired after February 28, 1913, shall be the cost of such property; except that—

* * * * * * *

(2) If the property was acquired by gift after December 31, 1920, the basis shall be the same as it would be in the hands of the donor or the last preceding owner by whom it was not acquired by gift. If the facts necessary to determine such basis are unknown to the donee, the Commissioner shall, if possible, obtain such facts from such donor or last preceding owner, or any other person cognizant thereof. If the Commissioner finds it impossible to obtain such facts, the basis shall be the fair market value of such property as found by the Commissioner as of the date or approximate date at which, according to the best information that the Commissioner is able to obtain, such property was acquired by such donor or last preceding owner;

* * * * * * *

(8) If the property (other than stock or securities in a corporation a party to a reorganization) was acquired after December 31, 1920, by a corporation by the issuance of its stock or securities in connection with a transaction described in paragraph (4) of subdivision (b) of section 203 (including, also, cases where part of the consideration for the transfer of such property to the corporation was property or money in addition to such stock or securities), then the basis shall be the same as it would be in the hands of the transferor, increased in the amount of gain or decreased in the amount of loss recognized to the transferor upon such transfer under the law applicable to the year in which the transfer was made.

Sec. 203. (b) (4) No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation, and immediately after the exchange such person or persons are in control of the corporation; but in the case of an exchange by two or more persons this paragraph shall apply only if the amount of the stock and securities received by each is substantially in proportion to his interest in the property prior to the exchange.

served and maintained after those assets were transferred to Magothy. In that situation it was obviously unnecessary for Magothy to issue additional shares in payment for the purchase rights. Had Magothy done so, it would not have changed the proportional interests of the shareholders, and the value of their shares, irrespective of the number held, would have remained the same. However, had Magothy issued shares in payment for the said purchase rights, the transaction unquestionably would have fallen within the provisions of subdivision (a) (8) of section 204, and the basis of the purchase rights in the hands of Magothy would have been the basis thereof to the transferors, which was nil. We think the acquisition by Magothy of the purchase rights is, considering all of the surrounding circumstances thereof, within the intendment and spirit of subdivision (a) (8), and that the basis there prescribed is the basis applicable to those rights in the hands of that corporation. In that view we are supported by the decisions in *King* v. *United States*, 10 Fed. Supp. 206; affd., 79 Fed. (2d) 453. Cf. *Commissioner* v. *Rosenbloom Finance Corporation*, 66 Fed. (2d) 556; certiorari denied, 290 U. S. 692. On this phase of the issue the Commissioner is sustained.

(b) The petitioner contends that in any event there should be added to the cost of $290,346.19 for the Symington Corporation's shares, determined by the Commissioner, the sums of $36,957.50, made up of the items set forth in paragraphs (65) and (66) of our findings, and $2,179.30, allegedly expended for revenue stamps and title fee in connection with Magothy's acquisition of the Delaware company's assets, a total of $39,136.80.

Under the several agreements which made up the so-called plan of reorganization of the Delaware company, the Maryland company assumed all of the current liabilities of that company and was to have sufficient of its current assets to exceed those liabilities by $1,500,000. Magothy was to have the remaining current assets. Upon the basis of figures on the Delaware company's books, the current assets transferred by that company to the Maryland company exceeded the current liabilities, likewise transferred, by $511,-206.78 more than $1,500,000. For this excess the Delaware company set up an account receivable on its books against the Maryland company. This account receivable was among the remaining assets transferred to Magothy. Thereafter, there was an account stated and settlement between the Maryland company and Magothy, which took into account current assets and liabilities which did not appear on the Delaware company's books. After that settlement, the Maryland company expended the items set forth in paragraph (65) of the findings and called upon Magothy for reimbursement, and it

was so reimbursed, for those items. The item set forth in paragraph (66) of the findings was expended directly by Magothy.

The petitioner says, without regard to the nature of the items, that the effect of the aforesaid reimbursement and expenditure was to reduce the value of the assets which Magothy received from the Delaware company, without any corresponding decrease in the consideration which it agreed to and did pay for those assets, so that the remaining assets represent an increased cost of $39,136.80, all of which is ascribable to the Symington Corporation's shares. We agree with this treatment of the matter, but only to the extent that the reimbursement and expenditure are related to actual liabilities of the Delaware and Maryland companies and not to organization expenses of Magothy.

As to the item of $2,179.30 alleged to have been expended for revenue stamps and title fee in connection with Magothy's acquisition of the Delaware company's assets, there is no evidence. The record does not even show that the expenditure was made. The one witness who testified as to all of the items involved stated that he knew nothing about this alleged expenditure. It is disallowed as additional cost of the acquired assets.

The items set forth in subparagraphs (a), (c), (d), and (e) of paragraph (65) and the item set forth in paragraph (66), which represent a total of $24,218.51, upon the facts stated are clearly not related to organization expenses of Magothy. That total figure is allowed as additional cost of the acquired assets.

As to the item of $12,739.08 set forth in subparagraph (b) of paragraph (65), only $1,901.53 may be allowed as additional cost of the acquired assets. Of the remainder, $837.55 is clearly an organization expense of Magothy, and $10,000, which represents organization expenses of both the Maryland company and Magothy, can not be segregated between the two, because of lack of evidence as to a proper basis upon which to make the segregation.

In view of the foregoing, we hold that the cost to Magothy of the 10,000 preferred shares in the Symington Corporation which it acquired from the Delaware company was $316,466.23, and, accordingly, that the gain to Magothy in 1925 upon the liquidation of the Symington Corporation was $951,841.13, instead of $977,961.17 as determined by the respondent.

5. The issue here is whether or not Magothy sustained a deductible loss in 1925 upon the liquidation of 30,000 common shares in the Delaware company, which it owned, and the amount of that loss, if any. The specific facts pertaining to the issue are set forth in paragraphs (5) to (9), (14), and (26) to (28) of our findings, but all of the facts contained within paragraphs (5) to (29), inclusive,

are applicable in a general way. The Revenue Act of 1926 governs the issue, and the controlling provisions thereof are embraced within sections 201 (c), 202 (a) and (d), 203 (b) (4), and 204 (a) (4), and (8).[3]

The shares in question are the 30,000 acquired by Magothy from Donald Symington and his associates in exchange for 30,000 of its own shares, as set forth in paragraphs (14) and (26) of the findings. Immediately after the exchange Donald Symington and his associates were in control of Magothy, since they owned all of its outstanding shares. If then, the exchange of shares for shares was bona fide and valid and is to be thus recognized, as petitioner contends and the respondent denies, the transaction is within the provisions of section 203 (b) (4) and, under the provisions of section 204 (a) (8), the basis of the shares in the hands of Magothy, for the purpose of computing gain or loss upon the liquidation of those shares, is the same as it would be in the hands of the transferors. Both parties concede that the exchange of 30,000 shares of stock of the Delaware company by Donald Symington and his associates for 30,000 shares of stock of Magothy was not a reorganization within the meaning

---

[3] SEC. 201. (c) Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock, and amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock. The gain or loss to the distributee resulting from such exchange shall be determined under section 202, but shall be recognized only to the extent provided in section 203. In case of amounts distributed in partial liquidation (other than a distribution within the provisions of subdivision (g) of section 203 of stock or securities in connection with a reorganization) the part of such distribution which is properly chargeable to capital account shall not be considered a distribution of earnings or profits within the meaning of subdivision (b) of this section for the purpose of determining the taxability of subsequent distributions by the corporation.

SEC. 202. (a) Except as hereinafter provided in this section, the gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the basis provided in subdivision (a) or (b) of section 204, and the loss shall be the excess of such basis over the amount realized.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(d) In the case of a sale or exchange, the extent to which the gain or loss determined under this section shall be recognized for the purposes of this title, shall be determined under the provisions of section 203.

SEC. 203. (b) (4) (Identical with the same section of the Revenue Act of 1924 previously quoted in footnote No. 2, *supra.*)

SEC. 204. (a) The basis for determining the gain or loss from the sale or other disposition of property acquired after February 28, 1913, shall be the cost of such property; except that—

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(4) If the property was acquired by gift or transfer in trust on or before December 31 1920, the basis shall be the fair market value of such property at the time of such acquisition.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(8) If the property (other than stock or securities in a corporation a party to a reorganization) was acquired after December 31, 1920, by a corporation by the issuance of its stock or securities in connection with a transaction described in paragraph (4) of subdivision (b) of section 203 (including, also, cases where part of the consideration for the transfer of such property to the corporation was property or. money in addition to such stock or securities), then the basis shall be the same as it would be in the hands of the transferor, increased in the amount of gain or decreased in the amount of loss recognized to the transferor upon such transfer under the law applicable to the year in which the transfer was made.

of section 203 (h) of the 1926 Act, and therefore does not come within section 203 (b) (3) of the 1926 Act.

With respect to respondent's contention that we should not treat the transfer by Donald Symington and his associates of 30,000 shares of the Delaware company in exchange for 30,000 shares of Magothy as coming within the provisions of section 203 (b) (4), but should rather treat it as if they had first redeemed their stock at $50 per share cash and then used the money to purchase each share of Magothy at $50 per share, we think it can not be sustained. The transaction was not handled in that way. Donald Symington and his associates actually transferred the 30,000 shares of stock in question to Magothy in exchange for 30,000 of its shares. Thereupon Magothy turned in the several certificates aggregating these 30,000 shares to the Delaware company and it issued a new certificate for 30,000 shares to Magothy. Early in 1925 Magothy turned in these shares for redemption and received $1,500,000 in cash therefor out of the funds which had been previously deposited at the Chase National Bank. We find nothing unreal in the transaction. Magothy was not organized merely for the purpose of liquidating these 30,000 shares and then dissolving. Far from it. It had numerous business transactions out of some of which respondent has determined large profits. For example, there is the disposal by sale of the 81,000 shares of National Steel Corporation stock which it acquired in the liquidation of the Symington Corporation. Magothy itself was not dissolved until 1928 and its dissolution had no connection with the redemption of the 30,000 shares of the Delaware company stock here in question, which took place early in 1925.

We find no merit in respondent's contention that we should disregard what was done and treat the transaction as if something else had been done. We overrule respondent's contention in that respect.

For convenience in the consideration of the gain or loss realized, the 30,000 shares are divided into two blocks: One block of 22,000, consisting of the shares acquired from T. H., Donald, John F., and Elsie J. Symington; the other of 8,000, consisting of the shares acquired from Emily H., and Elizabeth L. Symington. The parties have stipulated that the cost basis of the first block of 22,000 shares in the hands of the transferors is $50 per share. There is no longer any issue as to these shares. As to them it is agreed that Magothy had neither gain nor loss upon their liquidation in 1925. As the 8,000 shares in the second block were acquired by the transferors by gift before December 31, 1920, the basis thereof, under the provisions of section 204 (a) (4), is the fair market value of the shares at the time acquired.

The petitioner contends that that fair market value was $100 per share. This contention is predicated upon the earnings, book value of assets, stock values returned and adjusted by respondent for capital stock tax purposes, and the opinion evidence of Donald Symington. The Commissioner determined a value of $50 per share at the basic date and contends that the evidence does not overcome the correctness of his determination. The evidence on this point is quite voluminous, consisting of statements taken from the books showing the annual earnings of the corporation for several years before and after the basic date; the book value of the assets underlying the stock as of December 31, 1920; the value of the capital stock of the corporation as determined by the Commissioner for capital stock purposes; the testimony of Donald Symington, who disclosed his familiarity with the stock and the earning history of the corporation and knowledge of the assets underlying the stock. We do not deem it necessary to discuss this evidence in detail. We have carefully considered it all and from it we have found that the 8,000 shares of stock in question had a fair market value of $80 per share at the time it was acquired by gift, December 15, 1920, by Emily H. and Elizabeth L. Symington.

For reasons which we have already stated, petitioner Magothy Corporation is entitled to use this $80 per share as its basis in determining its gain or loss on the liquidation of these shares of the Delaware company in 1925.

6. In this issue Magothy claims a deduction of $2,630 for 1925, that being the amount of a capital stock tax assessed against it in 1928, after its dissolution, for the capital stock tax period July 1, 1925, to June 30, 1926, which was paid by the Patapsco Corporation, one of the transferees, in liquidation of Magothy. Magothy kept its books and rendered its income tax returns on an accrual basis. The facts pertaining to the issue are set forth in paragraph (62) of our findings.

The respondent contests the right of Magothy to the deduction, on the ground that the tax was paid by another.

It is said that the assessment resulted from the disallowance of Magothy's claim for exemption from the tax. Under the circumstances, the tax should have been accrued and deducted by Magothy in 1925. *Continental Baking Corporation*, 30 B. T. A. 354; affd., 77 Fed. (2d) 119. We have the year 1925 before us and the claimed deduction is allowed to Magothy for that year.,

We think it is of no consequence that the tax was eventually paid by the Patapsco Corporation. Liability for the tax accrued in 1925, and there was then no liability on the part of the Patapsco Corporation to pay it. The latter's liability arose in connection with the liquidating distribution to it in 1928 of the assets of Magothy,

which is quite another matter and has nothing to do with determining when the tax is deductible to Magothy.

7. The question is whether or not a liquidating dividend of $25,000 received by Magothy from the Lexington Machine Corporation in 1926, and reported in the return for that year, should be reduced by $3,149.86 representing income tax due from the Lexington Machine Corporation and paid by Magothy in 1927. The facts pertaining to the issue are set forth in paragraph (69) of our findings. As to this issue petitioner states in its brief as follows:

* * * The Commissioner was probably correct in disallowing the amount of Federal income taxes accrued against the The Lexington Machine Corporation as a deduction for the year 1927. However, it is clear that if the amount in question does not constitute an allowable deduction for the year 1927, the year in which paid, then it obviously constitutes a reduction of the liquidating dividend received and taxed during the year 1926. The true liquidating dividend was only $21,850.14 instead of $25,000.00. Therefore, petitioners request that this Board determine that taxable income for the year 1926 should be reduced by the amount of $3,149.86, representing Federal income taxes accrued against The Lexington Machine Corporation, and assumed by Magothy Corporation upon the liquidation of the said The Lexington Machine Corporation in October, 1926.

On brief the respondent states: "Should the Board find as a fact that the Magothy Corporation assumed and paid the liability of the Lexington Machine Corporation in the sum of $3,149.86 for Federal income taxes, the respondent offers no objection to reducing the liquidating dividend received by the amount of Federal income taxes so paid."

We have found as a fact that Magothy did pay the tax in question. The liquidating dividend received by Magothy in 1926 should accordingly be reduced by $3,149.86.

8. The question presented by this issue is the amount of the loss sustained by Magothy in 1927 upon the sale of certain shares in the Gibson Island Co. to T. H. Symington. The petitioner contends that Magothy sustained a loss of $821,199.47 upon the transaction, measured by the excess of the alleged cost of $971,199.47 over the selling price of $150,000. The respondent contends that the transaction was not a bone fide sale, but contained an element of gift; that the fair value of the shares at the time they were disposed of to T. H. Symington for $150,000 was $729,732.62; and that loss sustained by Magothy in the transaction should be measured by the excess of the cost, which respondent determined to be $923,200, over the said fair value. Upon the respondent's basis, the loss is $193,467.38, which he allowed. The facts pertaining to the issue are set forth in paragraphs (36) to (45), inclusive, of our findings.

(a) We shall first consider the dispute as to the cost of the shares. To the figure of $923,200 determined by the respondent in his

deficiency notice to be the cost to petitioner of these shares, the petitioner contends there should be added $47,999.47, this being the amount paid by Magothy to E. H. Bouton in the purchase of his 368 preferred and 368 common shares in the Gibson Island Co., as set forth in paragraph (43) of the findings. The contention is predicated upon the proposition that the sale to T. H. Symington included the shares purchased by Magothy from Bouton. The proposition is denied by the respondent.

It will be noted from the findings that Bouton had thrice within 1927, the last time on November 15, 1927, demanded that the syndicate purchase his shares in the Gibson Island Co. as provided in the agreement of January 1923; that Magothy had taken over the liability of the syndicate under the aforesaid agreement in February 1925, when it acquired its shareholdings in the Gibson Island Co.; that T. H. Symington's offer to purchase Magothy's shares in the Gibson Island Co. was made on December 13, 1927; and that the Bouton shares were purchased by Magothy on January 26, 1928. Therefore, at the times of Symington's offer and the acceptance and approval thereof by the directors and shareholders of Magothy, respectively, the liability of Magothy to purchase the Bouton shares had become fixed and determined and the purchase thereof was pending.

Petitioners offered the testimony of Donald Symington, former president of Magothy, and L. A. Townsend, former secretary and treasurer of Magothy, to prove that when the 9,232 shares of preferred and 17,532 common shares in the Gibson Island Co. were sold to T. H. Symington for $150,000, it was also intended to include the 368 shares of preferred and 368 shares of common formerly owned by Bouton. While we do not question the good faith of these witnesses in so testifying, we are not convinced that their recollection of the transaction is a more accurate record of it than the recorded evidence of the transaction.

The written offer of T. H. Symington, the directors' resolution of acceptance thereof, and the shareholders' resolution approving the directors' action make up the contract under which Magothy disposed of its shares in the Gibson Island Co. to T. H. Symington. There is nothing ambiguous about the contract. It relates to 9,232 preferred and 17,532 common shares in the Gibson Island Co., and petitioners concede that the Bouton shares are not expressly included therein. That concession is supported by the finding that Magothy purchased the Bouton shares at a time subsequent to its contract with T. H. Symington and after delivery under the contract of the shares which it actually then owned. These documents, which are a part of the corporate records, were prepared concurrently with the transaction, and we believe that these documents portray the transaction with

greater reliability than does the testimony of the witnesses drawn from memory nine years after the transaction took place. Moreover, there are corroborating facts which indicate, we think, that the entire contract between T. H. Symington and Magothy is embraced within the offer and acceptance. The Bouton shares were never delivered to T. H. Symington. After they were acquired from Bouton, they continued in the ownership and possession of Magothy until that corporation was liquidated on February 2, 1928. Upon liquidation Magothy distributed them on a share for share basis to its two remaining shareholders, the Patapsco Corporation and T. H. Symington & Son, Inc., between whom all of the outstanding shares of Magothy were owned in equal amounts, the distribution being made under an agreement in which the two shareholders covenanted and agreed with each other to each assume one-half of all of the liabilities of Magothy.

In view of the foregoing, we hold that the Bouton shares were not a part of the sale by Magothy to Symington, and, therefore, that the cost of the said shares may not be considered in computing the loss sustained by Magothy in that transaction. The respondent's determination of a cost figure of $923,200 for the purpose of computing the loss is sustained.

(b) The further question on this issue is whether the disposition by Magothy of its shares in the Gibson Island Co. to T. H. Symington was a bona fide sale, or whether, as the respondent contends, it contained an element of gift.

The respondent determined that the fair value of the shares so disposed of to Symington, for $150,000, was $729,732.62. This determination was reached by an apportionment of the net worth of the Gibson Island Co., as shown by its books, over all of its outstanding shares. That book net worth reflected the actual cost of the assets to the Gibson Island Co., and the respondent's determination does not purport to be based upon the fair market value of the assets as of the time of the transaction in question.

We think that the evidence pertaining to this issue, as a whole, not only overcomes the statutory presumption of correctness of the respondent's determination, but shows that it was an arm's length transaction. The circumstances under which the sale was made to T. H. Symington dissipate the idea that there was an element of gift involved in the transaction. These circumstances are described in the testimony of Donald Symington, who testified at length concerning the transaction. He testified that Magothy, at the time of the transaction, had already invested nearly a million dollars in the Gibson Island Co. That investment dated back to February 1925, when, buttressed by the advice and opinion of an expert who had

been engaged to investigate the possibilities of the Gibson Island development, Magothy believed that development could be prosecuted to a profitable conclusion. But the repeated losses in the period of May 1926 to December 1927 disclosed, at least in the minds of the responsible officers of Magothy, the futility of attempting to carry on the venture. Within that period, the capital of the Gibson Island Co. had been encroached upon and impaired, by increasing periodical deficits, to the extent of more than $213,000. The loss in December 1927 alone amounted to approximately $40,000, which, if continued at no greater monthly rate than that, would have wiped out the remaining capital of the Gibson Island Co. within another 18 months. It was at this point that Donald Symington demanded that the development be stopped and refused to gamble further with the resources of Magothy in that development. This brought about strained relations with T. H. Symington, who was then the president of the Gibson Island Co., and resulted in an offer to T. H. Symington that he could have the shares in the Gibson Island Co. for $150,000. Later events proved that Donald Symington was right in his forecast of the future of the Gibson Island Co., for, as the testimony shows, it turned out to be the "flat failure" that he predicted it would be.

Magothy is entitled to a deduction of $773,200 for 1927, by virtue of having sustained a loss of that much upon the sale of its shares in the Gibson Island Co. to T. H. Symington.

9. This issue is alternative to point (a) of the preceding issue. Here, the petitioner claims that Magothy is entitled to a loss deduction of $47,999.47 for 1927, representing the amount paid to Bouton for his 368 preferred and 368 common shares in the Gibson Island Co. The deduction is claimed on the grounds that Magothy was compelled by contract to purchase Bouton's shares; that said shares had no value either in 1927 or when actually purchased in 1928, with the result that the amount paid to Bouton was irretrievably lost; and that the contract obligation to purchase the shares became a fixed and determined liability of Magothy in 1927. An alternative claim is that Magothy is entitled to a deduction of $42,019.47 for 1927, representing the excess of the amount paid to Bouton for the shares over the alleged fair market value of the shares when purchased.

Petitioner's contention must be denied. It is clear that Magothy's purchase of Bouton's stock was a capital transaction and the stock was not worthless either at the time of purchase or at the end of the year.

It is true that the stock had greatly depreciated in value and was not nearly worth the price which Magothy had to pay for it under the agreement which it had taken over from Donald Syming-

ton and his associates. The transaction nevertheless remained a purchase and petitioner is not entitled to take a loss until the stock was disposed of in a transaction where gain or loss is recognized. *Grigsby* v. *Commissioner*, 87 Fed. (2d) 96, affirming the Board, 33 B. T. A. 568. Petitioner's alternative contention is not sustained.

10, 11, 12, and 13. These issues involve the question of what is the basis to each of Emily H., Elizabeth L., and Elsie J. Symington, and T. H. Symington & Son, Inc., without regard to the distributions discussed hereinafter in issue 14 of their shares in Magothy, which they disposed of in 1928. The respondent fixed the basis as to all four at $50 per share. The petitioner concedes, on the reply brief, that the respondent's basis is correct as to Elsie J. Symington and T. H. Symington & Son, Inc. As to the basis of the shares of Emily H. and Elizabeth L. Symington, the petitioners contend the correct basis is $100 per share, this being a logical sequence to their contentions in connection with issue 5—that the fair market value of the shares in the Delaware company which they acquired by gift in 1920 and exchanged for their shares in the Magothy Corporation in 1925 was $100 per share at the time so acquired. The issue is governed by sections 112 (b) (5) and 113 (a) (6) of the Revenue Act of 1928, which are identical in meaning with sections 203 (b) (4) and 204 (a) (6) of the Revenue Act of 1926.

In the decision of issue 5 we held that the basis of each of these two petitioners' shares in the Delaware company was $80 per share. If the exchanges of their shares in the Delaware company for shares in the Magothy Corporation in 1925 were nontaxable exchanges within the provisions of section 203 (b) (4) of the Revenue Act of 1926, as petitioners contend, they are likewise within the provisions of section 112 (b) (5) of the Revenue Act of 1928, and therefore the bases of their shares in Magothy are, under section 113 (a) (6) of the 1928 Act, the same as the bases of the exchanged shares in the Delaware company—that is, $80 per share. Redetermination of the deficiencies will be made accordingly.

14. The question here is whether or not the distributions of $10 per share and $20 per share paid by Magothy on December 20, 1927, and January 9, 1928, respectively, were distributions in liquidation, which are to be applied against and reduce the bases to the distributees, of their shares in the said corporation, for the purpose of computing gain or loss upon the disposition of those shares in 1928. The respondent treated them as distributions in liquidation and, accordingly, reduced the distributees' basis of their shares in Magothy; but the petitioners contend that the distributions were ordinary dividends paid in the regular course of business and without any thought of liquidating the corporation. Our decision is that the dividend distribution of $10 made December 20, 1927, was an ordinary dividend

and not a liquidating dividend, but that the dividend of $20 per share made January 9, 1928, was a liquidating dividend made in pursuance of a plan for the complete liquidation of Magothy. Determination of the deficiencies will be made accordingly.

15. Here the petitioner charges the respondent with error in holding that there was distributed to T. H. Symington & Son, Inc., in 1928, in liquidation of Magothy, one-half of the Bouton shares (184 preferred and 184 common shares in the Gibson Island Co.), discussed in subdivision (a) of issue 8 and in issue 9, and in including the alleged fair value thereof, $18,400 in the payment received by T. H. Symington & Son, Inc., for its shares in Magothy for the purpose of computing gain or loss upon the liquidation of said shares in Magothy. The petitioner contends that the Bouton shares were sold to T. H. Symington in 1927 and were not among the assets distributed to the two remaining shareholders in the liquidation of Magothy.

In our decision under subdivision (a) of issue 8, we held that the Bouton shares were not a part of the shares in the Gibson Island Co. which Magothy sold to T. H. Symington in 1927.

The facts set forth in paragraph (63) of the findings show conclusively that one-half of the Bouton shares were distributed to T. H. Symington & Son, Inc., in 1928 in liquidation of the latter's shares in Magothy. On this issue the respondent's action is sustained.

16. The question here is the fair market value of the 184 preferred and 184 common shares in the Gibson Island Co., which T. H. Symington & Son, Inc., received in liquidation of its shares in Magothy, as of the date of the distribution, February 2, 1928. The respondent determined that value to be $100 per share for the preferred and nothing for the common, a total of $18,400. The petitioner contends that the correct fair market value is $16.25 per share for the preferred and nothing for the common.

We think that the best evidence that the record affords as to the fair market value of these shares is the sale by Magothy of 9,232 preferred and 17,532 common shares in the Gibson Island Co. to T. H. Symington in 1927 for $150,000. We have held in our decision under subdivision (a) of issue 8 that that was a bona fide sale made at arm's length. The parties are in an apparent agreement that the price paid by Symington in that transaction related entirely to the preferred shares. It seems clear from the evidence that the common stock of the Gibson Island Co. had no fair market value. Our conclusion is that the fair market value of the shares under consideration, as of the date distributed to T. H. Symington & Son, Inc., in liquidation, was $2,990. The respondent's determination is modified accordingly.

17. The question presented by this issue is whether or not certain liabilities of Magothy which were unpaid at the time of the liquidation of that corporation should be taken into consideration in computing the gain or loss to T. H. Symington & Son, Inc., resulting from the liquidation of its shares in Magothy. The particular liabilities involved are the capital stock tax of $2,630 for the period July 1, 1925 to June 30, 1926, discussed in issue 6, and such additional income taxes, penalty, and interest as may be found to be due from Magothy under the Board's decision in the present proceedings. The respondent did not take either of these liabilities into consideration in computing the gain or loss. The petitioner contends that he should have done so, for the reason that T. H. Symington & Son, Inc., bore one-half the capital stock tax of $2,630 mentioned above and will bear one-half of any taxes, penalties and interest determined against Magothy in these proceedings. Manifestly the Government is not entitled to collect from the petitioner, T. H. Symington & Son, Inc., capital stock taxes and additional income taxes, penalty, and interest of Magothy, as transferee of Magothy, and then charge the entire amount received by T. H. Symington & Son, Inc., in liquidation of Magothy as income without reduction for such taxes paid or assumed to be paid by it. Cf. *United States* v. *Brown*, 86 Fed. (2d) 798; *Joseph A. Mudd*, 14 B. T. A. 1417; *S. J. Blumenthal*, 12 B. T. A. 1205; *J. G. Tomlinson*, 7 B. T. A. 961; *E. M. F. Leflang*, 6 B T. A. 4; *E. F. Cremin*, 5 B. T. A. 1164; *Benjamin Paschal O'Neal*, 18 B. T. A. 1036. On this issue we hold for petitioner.

Reviewed by the Board.

*Decision will be entered under Rule 50.*