NORTH AMERICAN UTILITY SECURITIES CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ARMIN A. SCHLESINGER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

KATHLEEN M. SCHLESINGER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

MABEL B. SMITHERS, PETITIONER,* *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 75039, 75960, 75961, 75900.* Promulgated July 13, 1937.

*Edward H. Green, Esq.,* for the petitioners, Docket Nos. 75039, 75960, and 75961.

*Truman Henson, Esq.,** for the petitioner, Docket No. 75900.

*Hartford Allen, Esq.,* and *S. B. Anderson, Esq.,* for the respondent.

---

*Pursuant to Order of the Board entered Aug. 17, 1937, petition of Mabel B. Smithers, Docket No. 75900, is removed from consolidation with these proceedings and this report and decision is vacated with respect to Docket No. 75900.

OPINION.

HARRON: In the petitions, Docket Nos. 75039, 75960, and 75961, the facts have been stipulated by the parties. Attached to the stipulation of facts and made part thereof are certain exhibits. We adopt the stipulation of facts with the appended exhibits as our findings of fact and incorporate them by reference. The petitioner and respondent in Docket No. 75900 have stipulated that the decision in the above petitions will control and be accepted as final.

The North American Utility Securities Corporation is a Maryland corporation with offices in New Jersey. In 1931 it owned 50,000 shares of the common stock of the Newport Co., which cost $1,155,252.64. The other petitioners are individuals who owned stock of the Newport Co. in 1931 as follows: Armin A. Schlesinger, president of the Newport Co., owned 48,789 shares of common stock, of which he had owned for over two years 43,005 shares which cost $606,265.76, and for less than two years he had owned 5,784 shares which cost $116,297.17. He also purchased in 1931, 600 additional shares which cost $9,262.50; Kathleen M. Schlesinger was beneficiary of the A. A. Schlesinger trust and was entitled to two-thirds of the income of the trust. In 1931 the trust owned 41,463.6 shares of common stock which cost $595,886.07. Mabel B. Smithers owned 1,430 shares of common stock of which 1,200 shares costing $661.30 had been held for more than two years and 230 shares costing $5,679.79 had been held for less than two years.

The Newport Co., hereinafter referred to as "Newport", in October 1931, had outstanding 32,945 shares of class A convertible stock of $50 par value and 519,347 shares of no par common stock. Newport stock was widely held.

Newport was a Delaware corporation. It was engaged in the dyestuffs and chemical business, which it carried on through wholly owned subsidiaries. It also carried on itself a wood distillate business through an operating division called the Wood Distillate Division. Newport owned all the capital stock of Newport Chemical Corporation, which owned property and carried on the dyestuffs and chemical manufacturing business and also owned all the stock of four subsidiaries engaged in the chemical manufacturing business. The Newport Chemical Corporation will be referred to as "Chemical."

Pursuant to an agreement dated July 31, 1931, amended August 13, 1931, made by Newport with E. I. du Pont de Nemours & Co., hereafter called "du Pont", the dye and chemical business of Newport, carried on through Chemical, was conveyed to du Pont August 25, 1931. Property, assets, and business of Chemical were exchanged for 103,500 shares of 6 percent nonvoting debenture stock of du Pont of a par value of $100 per share. Newport received 3,785 shares of the total du Pont stock directly from du Pont in exchange for all the outstanding stock of Chemical. Newport received from Chemical 99,715 shares of the du Pont stock and $459,366.24 cash, which was the consolidated net earnings and cash on hand and in banks of Chemical and its wholly owned subsidiaries. Chemical thereafter had no assets and Newport had du Pont stock and cash in return for the dye business it formerly owned. Chemical was dissolved in December 1931.

On September 1, 1931, the directors of Newport resolved to organize a new company for the purpose of taking over the wood distillate business and to thereafter dissolve Newport. Stockholders were notified of this entire plan September 5. Newport Industries, Inc., was organized and, effective September 28, the wood distillate business and property of Newport and $1,400,000 working capital consisting of cash and du Pont 6 percent debenture stock was transferred to Newport Industries in return for 519,347 shares of capital stock of Newport Industries. Effective October 3, the Newport Industries stock having a value of $8 per share was distributed as a dividend to the common stockholders of Newport on a share for share basis in accordance with the plan of reorganization. Newport common stockholders did not surrender their Newport common stock. The respondent concedes that there was a reorganization effected by this transaction between Newport and Newport Industries, within section 112 (i) (1) (B) of the Revenue Act of 1928.

Dissolution of Newport was contemplated in the plan of reorganization and was formally approved by the stockholders October 23. Thereafter, the remaining assets of Newport, consisting of cash and du Pont debentures, were distributed to the stockholders as follows: Class A convertible stock was redeemed at $55 per share with accrued dividends; each common stockholder received 5 cents on each share of common, plus one share of du Pont stock for 6½ shares of common stock of Newport, fractional shares being paid for in cash at the rate of $107.125 per share of du Pont Debenture Stock (the net price realized for shares of such stock sold for that purpose on October 26, 1931) equal to $16.481 per share of the Newport Common Stock representing a fractional interest. The Newport Common stockholders surrendered their common stock on this distribution. Newport was dissolved October 26, 1931.

The petitioners in this proceeding have treated the distribution of Newport Industries stock as a tax-free distribution under section 112 (g).[1] (All references to statutory provisions herein refer to the Revenue Act of 1928.) They have treated the distribution of du Pont stock and cash as a distribution in liquidation under section 115 (c).[1] Treating these distributions as two separate transactions they have computed gains and loss on an adjusted basis for the Newport stock, allocating the original cost of Newport common between Newport common and Newport Industries stock. (Art. 600, Regulations 74.) The respondent alleges error in this procedure and contends that there was a general plan of reorganization of Newport encompassing both the transfers of property and stock of its subsidiary, Chemical, to du Pont and the transfer of property to Newport Industries; that section 112 (g) is not applicable and that the exchange of Newport common stock was for the Newport Industries stock as well as du Pont stock and cash; and that since section 115 (c) is limited by section 112, section 112 (e)[1] is applicable and no loss may be allowed in Docket No. 75039, and that the distribution of Newport Industries stock comes under the provisions of section 112 (b) (3)[1] notwithstanding that the certificates of common stock of Newport were not surrendered, so that gain or loss on the entire series of distributions should be recognized only to the extent provided in sections 112 (b) (3), (c) (1) and (e).[1]

Section 112 (g) and its counterparts [2] were contained in the statute from the Revenue Act of 1924 until omitted by the Revenue Act of 1934. Section 115 (c) in its present form also appeared for the first

---

[1] *Revenue Act of 1928*—

SEC. 115. DISTRIBUTIONS BY CORPORATIONS.

\* \* \* \* \* \* \*

(c) *Distributions in liquidation.*—Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock, and amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock. The gain or loss of the distributee resulting from such exchange shall be determined under section 111, but shall be recognized only to the extent provided in section 112. In the case of amounts distributed in partial liquidation (other than a distribution within the provisions of section 112 (h) of stock or securities in connection with a reorganization) the part of such distribution which is properly chargeable to capital account shall not be considered a distribution of earnings or profits within the meaning of subsection (b) of this section for the purpose of determining the taxability of subsequent distributions by the corporation.

SEC. 112. RECOGNITION OF GAIN OR LOSS.

(a) *General rule.*—Upon the sale or exchange of property the entire amount of the gain or loss, determined under section 111, shall be recognized, except as hereinafter provided in this section.

(b) *Exchanges solely in kind.*—

\* \* \* \* \* \*

(3) STOCK FOR STOCK ON REORGANIZATION.—No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization.

time in the Revenue Act of 1924 (section 201 (c)). The interrelation of these two sections has been considered in several cases and the respondent here does not seem to advance any theory of recovery which has not been considered before. See *James M. Harrison*, 30 B. T. A. 966; *Rudolph Boehringer*, 29 B. T. A. 8; *Gross* v. *Commissioner*, 88 Fed. (2d) 567.

The distribution of Newport Industries stock is conceded to have been pursuant to the plan of reorganization and at the time of that distribution there was no surrender by the stockholders of their old stock or any agreement to surrender it at any time in the future. The fact that their old stock was not surrendered brings this transaction squarely within the terms of section 112 (g) and has been emphasized as a controlling factor in the *Boehringer* case and the *Gross* case, supra. This distribution taken alone is clearly governed by section 112 (g). The respondent argues that this distribution can not be considered alone, but must be considered as a step in a single transaction which includes the second distribution. We find no authority which requires this result in the situation before us. The distributions were carried out as separate transactions and each transaction specifically falls within separate sections of the statute. We see no compelling reason for disregarding what was actually done when it was apparently done in good faith for the purpose of obtaining the benefits clearly conferred by the separate provisions of the statute. We find no authority for holding that section 112 (g) is not applicable where a reorganization is part of a plan of liquidation. Part

---

(c) *Gain from exchanges not solely in kind.—*

(1) If an exchange would be within the provisions of subsection (b) (1), (2), (3), or (5) of this section if it were not for the fact that the property received in exchange consists not only of property permitted by such paragraph to be received without the recognition of gain, but also of other property or money, then the gain, if any, to the recipient shall be recognized, but in an amount not in excess of the sum of such money and the fair market value of such other property.

\* \* \* \* \* \* \*

(e) *Loss from exchanges not solely in kind.—*If an exchange would be within the provisions of subsection (b) (1) to (5), inclusive, of this section if it were not for the fact that the property received in exchange consists not only of property permitted by such paragraph to be received without the recognition of gain or loss, but also of other property or money, then no loss from the exchange shall be recognized.

\* \* \* \* \* \* \*

(g) *Distribution of stock on reorganization.—*If there is distributed, in pursuance of a plan of reorganization, to a shareholder in a corporation a party to the reorganization, stock or securities in such corporation or in another corporation a party to the reorganization, without the surrender by such shareholder of stock or securities in such a corporation, no gain to the distributee from the receipt of such stock or securities shall be recognized.

\* \* \* \* \* \* \*

(i) *Definition of reorganization.—*As used in this section and sections 113 and 115—

(1) The term "reorganization" means \* \* \*, or (B) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its stockholders or both are in control of the corporation to which the assets are transferred, \* \* \*.

² Sec. 203 (c), Revenue Acts of 1924 and 1926; sec. 112 (g), Revenue Acts of 1928 and 1932.

of the business in which these petitioners had invested was continued by virtue of the reorganization and their beneficial interest in that business was continued by their receipt of stock in the new company. "When stock or property is manipulated through corporate organizations but there is no substantial change in the ultimate beneficial ownership, gain and loss is not considered to be realized, because there is not a real sale, and the investment is only continued in an altered form until some later conversion occurs." *Gross* v. *Commissioner, supra.*

The Newport Co. disposed of its chemical and dye business by transfer of properties of Chemical to du Pont for stock. This left it with a wood distillate business. By reorganization of Newport with Newport Industries the interest of the common stockholders of Newport was continued in the wood distillate business. The stockholders consented to transfer to Newport Industries du Pont stock and cash amounting to $1,400,000 along with the operating assets to be used in the wood distillate business. Their interest continued in all of these assets transferred. All that remained in Newport was a residue of cash and du Pont stock and that is all that the Newport Common stock attached to as evidences of ownership. Distribution of this *residue* of cash and stock to Newport common stockholders in our opinion was not pursuant to a reorganization but was rather pursuant to a liquidation of what was left after a reorganization had been completed.

That the two distributions should constitute one is the keystone of the respondent's argument and with it falls his whole case. Since they were separate distributions and separate transactions there was no "exchange" of stock in the Newport Co. for stock of Newport Industries, Inc. There was no surrender of the former in return for the distribution of the latter, and such an "exchange" is necessary to the application of sections 112 (b) (3), (c) (1), and (e) for which respondent is contending. Furthermore, since the two distributions are separate transactions it is immaterial that the first distribution may have been in liquidation as well as pursuant to a reorganization, because the liquidation section (115 (c)) is expressly limited by the reorganization provisions (section 112) and therefore section 112 (g) would apply under the specific terms of both sections. This is clearly held by the decision of the Circuit Court of Appeals for the Fifth Circuit in *Gross* v. *Commissioner, supra.* There the Commissioner contended that a certain distribution of stock pursuant to a reorganizataion was a liquidating dividend and therefore taxable under section 115 (c) and the court held:

But Sec. 115 (c) itself says that the gain or loss "shall be recognized only to the extent provided in Sec. 112." We find in Sec. 112 (g) this provision: "If there is *distributed in pursuance of a plan of reorganization to a shareholder*

in a corporation a party to a reorganization stock or securities in such corporation or in another corporation a party to the reorganization *without the surrender by such shareholder* of stock or securities in such corporation, no gain to the distributee from the receipt of the stock or securities shall be recognized." Gross did not surrender his old stock for the new. The new stock did come to him in pursuance of and by the express provisions of the transaction between Tampa Box Company and the new corporation, and if in that transaction each of those corporations was a party to a reorganization no gain is to be recognized as accruing to him. [Italics supplied by the court.]

Thus, in the *Gross* case, even though the distribution was in liquidation as were later distributions in the same case, section 112 (g) was held to govern because of the specific limitation of section 115 (c) by the provisions of section 112. The identical reasoning is applicable in the case at bar and is controlling.

The respondent's determination is disapproved. The petitioners have properly allocated the basis of Newport stock under Regulation 74, article 600. There is no dispute as to the cost of the Newport stock to the petitioners, the value of the Newport Industries stock, or the du Pont stock. Therefore decision should be entered as follows:

Reviewed by the Board.

> *In Docket Nos. 75900, 75961, and 75039 decision will be entered for the petitioners. In Docket No. 75960 decision will be entered under Rule 50.*