*371 OPINION.
Turnee:
The petitioners in these proceedings are contesting the determination of the respondent that they are liable as transferees or as transferees of transferees of Large, Overholt, Distributing, or Geneva, or all of them. They question the liability of each of these corporations for both the income and excess profits tax with which the respondent seeks to charge them and contend, further, that if such liability ever existed there is now no liability against them, due to the running of the statute of limitations.
With respect to the liability of Large and Overholt, the question is whether the transfer of assets by Large to the L. D. Corporation for National stock and debentures and the transfer of assets by Overholt to the A. O. Corporation for National stock and debentures constituted reorganizations within the meaning of section 112 (i) (1) (A) of the Revenue Act of 1932[1] and exchanges within the meaning of section 112 (b) (4).[2] The liability of Geneva and a part of the liability with which Distributing is charged turns on the question whether the subsequent distributions in liquidation by Large and Overholt of the National Shares and debentures to Geneva and Dis *372 tributing, respectively, were exchanges within the meaning of section 112 (b) (3) of the statute.[3] With respect to the liability of Distributing, there is the further question whether the distribution to it by Overholt of 25,000 shares of Geneva stock was “in pursuance of a plan of reorganization” within the meaning of section 112 (g) of the statute.[4]
As early as 1930 National had been interested in acquiring certain properties of Large and Overholt and, during the first several months of 1933, had been carrying on negotiations with respect thereto with Schulte, which, directly or indirectly, owned controlling interests in both Large and Overholt. National desired to acquire Large and Overholt as going concerns but was insistent that when acquired they should be free from existing liabilities. Furthermore, it was unwilling to take over the whiskey inventory of Large, which was subject to the optional contract of sale with Schenley. By May 26, 1933, it had been agreed that the consideration to be paid for the desired assets of Large and Overholt should be 102,000 shares of National common stock and $600,000 par value of its debentures.
Under date of June 9, 1933, the agreement between National and Schulte was reduced -to writing. The assets of Large and Overholt which were subject to the agreement were carefully designated. It was also provided that upon request of National the designated properties should be conveyed to any wholly owned subsidiary of National and that such subsidiary, upon nomination of National, might “assume the obligations (without, however, releasing National therefrom) and thereupon * * * become entitled to all and singular the rights and benefits of National” thereunder. National was a holding company and its activities had never been those of an operating company, and, in the light of the provisions just cited from the contract and the transaction as it was actually carried out, we think it is apparent that National never had any intention of acquiring as its own any of the properties of Large and Overholt.
Schulte was desirous that the designated properties should be disposed of in such manner as to avoid liability for income taxes on such gains as might be realized by Large and Overholt. They consulted counsel and were advised that if the transactions were carried out in *373 the maimer more fully set forth in our findings of fact the gain would not be recognizable for income tax purposes. Geneva was accordingly organized and, in order that it might literally appear that Large and Overholt were transferring all of their assets to the L. D. Corporation and A. O. Corporation, respectively, Large on June 23, 1933, and Overholt on June 24, 1933, transferred their assets not covered by the National-Schulte agreement to Geneva for its stock, the said stock in each instance being distributed on the day of its receipt to their stockholders. In the meantime National had organized the L. D. Corporation and A. O. Corporation and under date of June 20, 1933, had advised the L. D. Corporation that it had been designated as the nominee of National to receive the desired assets of .Large and the A. O. Corporation that it had been designated as the nominee of National to receive the desired assets of Overholt. It was stated in these communications that National would undertake the payment of the full consideration to Large and Overholt for the assets to be acquired and that the L. D. Corporation and A. O. Corporation should each issue and deliver to National 4,500 shares of its capital stock, being the remainder of the authorized but unissued stock of each corporation. On the same date, June 20, the L. D. Corporation and A. 0. Corporation adopted appropriate resolutions accepting the proposals of National and on June 26, 1933, National advised the Schulte interests that the designated assets of Large and Overholt were to be transferred directly to the L. D. Corporation and A. O. Corporation, respectively, and that these corporations had become entitled to all of the rights and benefits of National under the agreement of June 9. On June 30, 1933, Large and Overholt transferred and conveyed the assets covered by the Schulte-National agreement to the L. D. Corporation and A. O. Corporation, respectively, receiving therefor from National 102,000 shares of its common stock and $600,000 par value of its debentures.
It is the contention of the petitioners that the transactions whereby Large and Overholt transferred their designated assets to the L. D. Corporation and A. O. Corporation, both subsidiaries of National, and received therefor stock and debentures of National constituted reorganizations within the meaning of section 112 (i) (1) (A), supra, and that recognition of the gain realized by Large and Overholt is accordingly barred by the provisions of section 112 (b) (4). It is the contention of the respondent, however, that the L. D. Corporation and A. O. Corporation, prior to June 30, 1933, the date of the transfer of the assets of Large and Overholt, acquired all of the rights of National to those assets and, since the assets were transferred directly to and retained by the L. D. Corporation and A. O. Corporation, National may not be said to have been “a party to a *374 reorganization” wherein Large and Overholt disposed of their assets, and the receipt of National’s stock and debentures by Large and Overholt was not without recognition of gain, as the petitioners claim. The respondent also contends that there was no reorganization of Large and Overholt within the meaning of section 112 (i) (1) (A), in that the assets transferred to the L. D. Corporation and A. O. Corporation did not constitute all or substantially all of the assets of Large and Overholt.
The facts here are substantially similar to those considered by us in Michigan Steel Corporation of New Jersey, 38 B. T. A.. 435, and the petitioners do not contend otherwise. It is their claim however that Groman v. Commissioner, 302 U. S. 82, and Helvering v. Bashford, 302 U. S. 454, do not justify the conclusion reached in that case and that we should overrule Michigan Steel and reach a contrary conclusion here. They concern themselves particularly with the fact that National was one of the contracting parties and that the consideration of 102,000 shares of National’s common stock and $600,000 par value of its debentures paid for the designated assets of Large and Overholt was issued and delivered directly to Large and Overholt by National. These facts, it is claimed, show acquisition by National of all of the assets of Large and Overholt in exchange for National stock and debentures within the meaning of subdivisions (i) (1) (A) and (b) (4) of section 112 of the statute, even though the said assets were transferred directly to and became the property of the L. D. Corporation and A. O. Corporation rather than National. We find nothing new in the contention of the petitioners and the arguments presented are no more convincing than when offered in Michigan Steel. There we expressed the view “that the Supreme Court was clearly disinterested in the question of whether the securities were transferred directly from the contracting parent corporation •or indirectly through a wholly owned subsidiary”, the important question being whether the securities issued for the assets were the securities of the corporation which became the owner of the assets and the business disposed of. In Helvering v. Bashford, supra, the Supreme Court said: “The participation of Atlas [in this case National] in the reorganization of its competitors [in this case Large and Overholt] into a new company [in this case L. D. Corporation and A. O. Corporation] which became a subsidiary did not make Atlas ‘a party to the reorganization.’ The continuity of interest required by the rule is lacking.” In Groman v. Commissioner, supra, we find the following:
It is argued, however that Ohio [in this case L. D. Corporation and A. O. Corporation] was the alter ego of Glidden [in this case National]; that in truth Glidden was the principal and Ohio its agent; that we should look at the realities of the situation, disregard the corporate entity of Ohio, and treat it as Glidden. *375 But to do so would be to ignore the purpose of the reorganization sections of the statute, which, as we have said, is that where, pursuant to a plan, the interest of the stockholders of a corporation continues to be definitely represented in substantial measure in a new or different one, then to the extent, but only to the extent, of that continuity of interest, the exchange is to be treated as one not giving rise to present gain or loss. If cash or “other property,” that is, property other than stock or securities of the reorganized corporations, is received, present gain or loss must be recognized. Was not Glidden’s prior preference stock “other property” in the sense that its ownership represented a participation in assets in which Ohio, and its shareholders through it, had no proprietorship? Was it not “other property” in the sense that qua that stock the shareholders of Indiana assumed a relation toward the conveyed assets not measured by a continued substantial interest in those assets in the ownership of Ohio, but an interest in the assets of Glidden a part of which was the common stock of Ohio? These questions we think must be answered in the affirmative. To reject the plain meaning of the term “party,” and to attribute that relation to Glidden, would be not only to disregard the letter but also to violate the spirit of the Revenue Act.
We think it clear that the contentions of the petitioners must be rejected and that the stock and debentures of National may not be regarded as the securities of a corporation “a party to a reorganization” within the meaning of section 112 (b) (4). Groman v. Commissioner, supra; Melvering v. Bashford, supra; and Michigan Steel Corporation of New Jersey, supra. We are also of the opinion that the respondent is correct in his contention that the L. D. Corporation and A. O. Corporation did not acquire all or substantially all of the assets of Large and Overholt. At no time was it contemplated that National or any subsidiary should acquire the whiskey inventory of Large, which was subject to the Schenley contract, or the other assets transferred by Large and Overholt to Geneva. If therefore the assets transferred to the L. D. Corporation and A. O. Corporation actually had been acquired by and had become the property of National, there still would not have been an acquisition of substantially all the assets of Large and Overholt so as to make the transaction a reorganization within the meaning of section 112 (i) (1) (A). Helvering v. Elkhorn Coal Co., 95 Fed. (2d) 732; A. W. Mellon, 36 B. T. A. 977. Accordingly, the gain realized by Large upon the transfer of assets to the L. I). Corporation and by Overholt upon the transfer of assets to the A. O. Corporation for National stock and debentures was not without recognition. Furthermore, the said National stock and debentures not being the securities of a corporation a party to a reorganization, section 112 (b) (3) is not applicable to the distributions of the said National stock and debentures to Geneva and Distributing in liquidation of Large and Overholt, respectively, and the gain realized by Geneva and Distributing by reason of such distributions must be recognized.
With respect to Distributing, there remains the question whether the gain realized upon the distribution to it by Overholt of 25,000 shares of Geneva stock under date of June 28, is to be recognized. *376 Of the said 25,000 Geneva shares Overholt had received 5,2126%53 shares on June 23 in partial liquidation of Large and 19,787[8]%53 shares direct from Geneva on June 24 in exchange for the Overholt assets not covered by the Schulte-National agreement of June 9. It is the claim of the petitioners that the transfer of assets by Over-holt to Geneva on June 24, for Geneva stock was a reorganization within the meaning of section 112 (i) (1) (B) of the act and that the distribution of the 25,000 shares of Geneva stock to Distributing on June 28 was a distribution without recognition of gain within the meaning of section 112 (g), supra. The respondent has made no determination that the gain realized by Overholt upon the transfer of assets to Geneva for Geneva stock is to be recognized. He does contend, however, that the transaction was not a reorganization under section 112 (i) (1) (B), but an exchange within the provisions of section 112 (b) (5).[5] and, not being a reorganization, the gain realized by Distributing upon the receipt of the Geneva stock in liquidation or partial liquidation of Overholt does not escape tax under section 112 (g), but is to be recognized in full. The argument of the respondent in support of the proposition that there was no reorganization between Overholt and Geneva is not very clear. The inference seems to be that, since the declared purpose for the organization of Geneva and for its continued existence was the liquidation of the assets of Large and Overholt omitted under the Schulte-National agreement, there was no business purpose for its organization under the doctrine of the “Gregory case”, presumably Gregory v. Helvering, 293 U. S. 465, and, therefore, no reorganization within the meaning of the statute. It may be that the respondent does not desire to press this argument, in as much as he has determined that Geneva is liable for excess profits tax, which liability is dependent upon the doing of business. Furthermore, Geneva did succeed to the business of Large, namely, that of selling an inventory of whiskey. At any rate, the respondent counters in his reply brief with the proposition that, even though the transfer by Overholt of part of its assets to Geneva for Geneva stock did constitute a reorganization within the meaning of section 112 (i) (1) (B) and by reason thereof the gain attributable to the 19,78'7[8]%53 shares acquired directly from Geneva escapes recognition, it may not be held that the gain attributable to the 5,2126% 53 shares similarly escapes recognition, since those shares had been *377 received by Overholt in partial liquidation of Large and not as a part of the reorganization between Overholt and Geneva.
According to section 112 (i) (1) (B), the term “Reorganization” means “a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the tranferor or its stockholder's or both are in control of the corporation to which the assets are transferred.” In the instant case, Overholt transferred assets to Geneva for shares of Geneva stock and immediately .after the transfer was in control of Geneva. Sec. 112 (|).'° The shares acquired directly from Geneva and the shares which had been received the previous day in partial liquidation of Large constituted more than 80 percent of all of the stock of Geneva and the claim that a reorganization under section 112 (i) (1) (B) took place between Overholt and Geneva is not defeated by the fact that the ownership of the 5,212[6]%53 shares of Geneva stock previously received was necessary to constitute ownership by Overholt of 80 percent or more of Geneva’s stock outstanding. Rawco, Inc., Ltd., 37 B. T. A. 128. As we have noted, however, the respondent contends that the gain realized by Distributing upon the receipt •of the Geneva shares previously received by Overholt in partial liquidation of Large is not to escape recognition of gain, since those ■shares were not acquired in the reorganization between Overholt and Geneva. He cites no authority for this pRoposition, however, and makes little or no argument. In our opinion the argument is not well founded. The shares, even though not acquired directly from Geneva, were essential to the reorganization between Overholt ■and Geneva, since without them Overholt was not in control of Geneva, as the statute requiRes. Furthermore, if a reorganization under section 112 (i) (1) (B) did occur between Overholt and Geneva, and we have held that it did, the 5,2126%23 Geneva shares, even though received in partial liquidation of Large, were the shares of a corporation a party to the reorganization and the facts show that the plan of reorganization contemplated theiR distribution by Overholt to Distributing, its sole stockholder. Accordingly the gain realized by Distributing upon the receipt of the entire 25,000 shares of Geneva stock is not to be recognized and, since the Overholt stock had no basis in the hands of Distributing and there is therefore no necessity to consideR any proration of such basis between the Geneva shares received on June 28 and the National shares and debentures received on June 30 (in that connection see A. W. Mellon, supra; Rudolph Boehringer, 29 B. T. A. 8; North American Utility Securities Corporation, 36 B. T. A. 320), it matters *378 not in computing the amount of gain to be recognized whether it be said that the Geneva stock was distributed in partial liquidation of Overholt without the surrender by Distributing of its Overholt stock, as contemplated by section 112 (g), or was distributed with other property, namely, National shares and debentures, in complete liquidation of Overholt within the meaning of section 112 (c) (l).[7]
The next issue involves the liability of Large, Overholt, Geneva, and Distributing for excess profits tax. In their original and reply briefs the argument of the petitioners is that the excess profits tax “should and may still be held unconstitutional,” and the claim that the said corporations could easily have relieved themselves of any claim for excess profits tax by declaring a greater capital stock tax value if they had thought the transactions with National might be held not to have been statutory reorganizations. A supplemental brief has been filed, however, in which it is argued that Distributing was not carrying on or doing business within the meaning of the statute.
According to the record, Distributing was organized in 1925. Its assets consisted of the stock of Overholt and stock of the West Overton Distilling Co. During the period here under consideration the latter corporation was not engaged in business and had no assets of value. Distributing’s articles of incorporation were not introduced in evidence, and we are not advised as to the declared purposes for its organization. It does appear that shortly after its organization it acquired the stock of Overholt and continued to hold that stock throughout its existence. It was a business corporation and we have no doubt that as originally organized it was intended to manage or participate in the management of Overholt and there is some indication that on one or more occasions it received distributions from Overholt, which amounts in turn were distributed to its stockholders. While the receipt of dividends by a holding company and the distribution of the amounts so received to its stockholders may not alone be sufficient to constitute the carrying on or doing of business for the purpose of sustaining the excess profits tax, it is well established that the participation by a parent corporation in the management and direction of the affairs of its subsidiary are sufficient to bring it under the statute. Edwards v. Chile Copper Co., 270 U. S. 452. Whatever may have *379 been the activities of Distributing prior to June 9, 1938, and whether it may have been engaged in operations sufficient to bring it within the rule laid down in Edwards v. Chile Copper Co., supra, we are convinced from the record before us that it was not engaged in such activities from and after June 9, 1933, the date of the Schulte-National agreement. During that period its activities did not extend beyond the holding of the Overholt stock and the receipt and distribution in liquidation of the Geneva stock and the National stock and debentures. Undoubtedly it also performed such formal acts as might be required of a sole stockholder with respect to the disposition by Overholt of its business and assets and its succeeding liquidation. Such activities, in our opinion, did not constitute the carrying on or doing of business within the meaning of sections 215 and 216 of the National Industrial Recovery Act. Cf. Eaton v. Phoenix Securities Co., 22 Fed. (2d) 497; Rose v. Nunnally Investment Co., 22 Fed. (2d) 102; United Mercury Mines Co. v. Viley, 20 Fed. Supp. 734. The petitioners are accordingly sustained in their claim that the respondent erred in determining that Distributing was liable for excess profits tax.
The petitioners do not claim that Large, Overholt, or Geneva were not carrying on or doing business within the meaning of the statute and the record would not support such a claim if it had been made. Overholt had been actively engaged in manufacturing and selling whiskey and there is nothing to indicate that it did not continue such activities up to June 30, 1933. Large was engaged principally in the selling of whiskey and that activity certainly continued until June 23, 1933, when it transferred its whiskey inventory to Geneva, while Geneva from and after June 23 succeeded to the business previously conducted by Large, namely, that of selling a substantial inventory of whiskey. In the light of these facts and the further fact that the question as to the constitutionality of the excess profits tax has been previously decided adversely to the petitioners, Briggs-Darby Construction Co., 41 B. T. A. 136; Chicago Telephone Supply Co. v. United States (Ct. Cls.), 35 Fed. Supp. 471, the respondent is sustained in his determination that Large, Overholt, and Geneva are liable to excess profits tax for the year before us.
The petitioners next claim that the respondent has committed certain errors in computing and determining the gain realized by Geneva and Distributing. The gain of Geneva resulted from the distribution to it by Large of 15,099 shares and $89,000 principal amount of debentures of National. In computing the gain realized by Large on receipt of the National shares and debentures, the respondent recognized the effect of the option held by Lehman Brothers and valued the shares so received by Large in proper proportions at $56, $61, and $97.75 per share. In computing the gain of Geneva, *380 be ignored tbe effect of tbe option and valued tbe entire 15,099 shares received by it in liquidation of Large at $97% per share and used tbe gain so computed in determining the deficiency against Geneva. On the same date that Large received tbe National shares and debentures for that portion of its assets transferred to the L. D. Corporation, it distributed the said shares and debentures to its stockholders in liquidation. The shares so distributed were subject to the option of Lehman Brothers in the hands of the stockholders of Large just as much as they were subject to the option in the hands of Large, and there is no justification for the respondent’s determination that the entire 15,099 shares received by Geneva had a value of $97% per share. The values used for the said stock in computing the gain of Large are, in our opinion, correct, and those values should be applied according to the same ratios in computing the gam of Geneva. Similarly, there is an inconsistency in the values used by the respondent in determining the gain realized by Overholt upon receipt of the National shares and debentures in. exchange for that portion of its assets transferred to the A. O. Corporation and in determining the gain realized by Distributing upon the receipt of the said National shares and debentures in liquidation of Overholt. The value used by the respondent in computing the gain realized by Distributing is, in our opinion, erroneous in as much as he failed to take into consideration the option held by Lehman Brothers. The gain of Distributing should accordingly be computed by using in proper ratios the values used for the National stock in computing the gain of Overholt.
In the light of our conclusions previously stated with respect to the distribution to Distributing by Overhoit of the 25,000 shares of Geneva stock, it becomes unnecessary to consider the differences between the parties with respect to the value of the Geneva shares when so distributed.
The petitioners make the further claim that the respondent in determining the gain realized by Geneva and Distributing from the liquidation of Large' and Overholt, respectively, has not made allowance for the liability of those corporations for any income and excess profits taxes for which they were liable. The respondent admits that no such allowance has been made, making some reference to the fact that what ever the liabilities of Large and Overholt may have been, those liabilities were not satisfied or paid by Geneva and Distributing, and are not therefore to be taken into consideration in determining the gain realized by them upon the liquidation of Large and Overholt. The contention of the respondent is not exactly clear, but his counsel seems to have confused the contention of the petitioners with a claim of deduction for taxes paid. To the contrary, the substance of the contention is that Geneva and Distributing received the assets of Large and Over- *381 bolt in liquidation, subject to any unpaid liabilities of Large and Over-holt for income and excess profits taxes and that such unpaid liabilities must be taken into consideration in determining the amount of gain realized by them as stockholders of Large and Overholt, just as would have been the case with any other unpaid liabilities of those corporations. The claim is not a claim for the deduction of taxes paid and the petitioners are sustained in their contention. Cf. T. H. Symington & Son, Inc., 35 B. T. A. 711. In this connection, however, the petitioners contend that Distributing, in determining its gain upon the liquidation of Overholt, is also entitled to offset an amount equal to 83.33 percent of any deficiency in income and excess profits taxes for which Geneva is liable. There is no merit in that contention. None of the assets received by Distributing were subject to any liability of Geneva. Distributing at one time and for a period of approximately four days held 25,000 shares of Geneva stock, but on June 28 those shares were distributed by it to its stockholders as a step in liquidation. At no time did Distributing receive any distribution of assets in liquidation of Geneva.
The petitioners contend that the right of assessment against them of any transferee liability for the income and excess profits taxes of Large, Overholt, Distributing, and Geneva expired prior to the mailing of the notices of determination herein. The following is a tabular statement of the dates on which the returns of the indicated corporations were filed, the date of expiration of the period for making assessment against each such corporation, and the dates on which respondent sent notices to petitioners of transferee liability in respect of the ta.x of such corporations:
[[Image here]]
No part of the deficiencies against Large, Overholt, Distributing, and Geneva has been assessed or paid. The distributions made in June 1933 by Large, Overholt, and Distributing rendered them without assets and the distributions made then and in December 1934 *382 and January 1935 have left Geneva with approximately $55,000, an amount insufficient to discharge the deficiency in its tax.
It is the contention of the petitioners that in as much as the period for assessment of the tax against the transferors, namely, Large, Overholt, Geneva, and Distributing, expired without the assessment of the deficiencies claimed herein, sections 275 (a) [8] and 276 (c) [9] of the Revenue Act of 1932, the liability of those corporations for tax was extinguished, section 607 of the Revenue Act of 1928,[10] and accordingly no transferee liability exists which may be assessed against these petitioners.
Claims against transferees are controlled by the provisions appearing under sections 311- and 312, supplementing the Revenue Act of 1932, and in subsection (b) of section 311 it is provided that the period for limitation of assessment shall be “In the case of the liability of an initial transferee of the property of the taxpayer, — within one year after the expiration of the period of limitation for assessment against the taxpayer”, and “In the case of the liability of a transferee of a transferee of the property of the taxpayer, — within one year after the expiration of the period of limitation for assessment against the preceding transferee, but only if within three years after the expiration of the period of limitation for assessment against the taxpayer.” In Gideon-Anderson Co., 20 B. T. A. 106, involving facts substantially similar to those presented here, the same question was presented with respect to the corresponding provisions of the Revenue Act of 1926, and we held adversely to the claim of the petitioners. Later the question was presented in City National Bank v. Commissioner, 55 Fed. (2d) 1073, affirming 19 *383 B. T. A. 1080; certiorari denied, 286 U. S. 561. In also holding adversely to the petitioners, the court said:
It is also contended that the transferee cannot be held, because under section 1106 (a) 26 U. S. C. A. § 1249 note, the statute of limitations not only operates to bar the remedy but extinguishes the liability. A complete answer to that contention is that limitation had not run against the transferee, because the assessment of its liability was made within the year allowed by section 280 (b) (1) after the expiration of the period of limitation for assessment against the taxpayer.
To concede the contention of the petitioners would require us to hold that before the Commissioner could proceed against transferees after the expiration of the period of limitations applicable to the transferor he is required to assess the tax against the transferor prior to the expiration of the period of limitations applicable to the transferor. In practically all cases, as here, such action would mean assessing tax against transferors entirely or substantially devoid of assets, which would be a futile and useless act. This question was considered and disposed of adversely to the petitioners in Flynn v. Commissioner, 77 Fed. (2d) 180, affirming 28 B. T. A. 578, wherein the facts were comparable to those presented here and the transferee provisions were those of the Revenue Act of 1928.
Finding nothing in the instant proceedings and the above quoted statutory provisions or in the argument of the petitioners in connection therewith which would justify our reaching a conclusion here different from that reached in the Gideon-Anderson Co., City National Bank, aiid Flynn cases, we deny the contention of the petitioners. See also A. R. McLennan, 25 B. T. A. 1052; England Walton & Co., 25 B. T. A. 1091; Newport Co., 24 B. T. A. 1246; Federal Oil Corporation, 24 B. T. A. 622; J. A. Kemp, 20 B. T. A. 875. Cf. Catharine D. Sharpe, 38 B. T. A. 502; affd., 107 Fed. (2d) 13; certiorari denied, 309 U. S. 665.
On brief the respondent concedes that the period of limitations had run at the time of sending transferee notices to the following named petitioners with respect to the indicated amounts of National stock and debentures distributed to them by Large on June 30, 1933, and that they were not transferees of transferees with respect to such distributions:
[[Image here]]
*384 We have set out in our findings of fact the distributions made by Large, Overholt, Distributing, and Geneva on June 80, 1933 (and subsequently in the case of Geneva), the persons to whom they were made, and what each received. The recipients received such distributions without payment of value therefor and as a result thereof the corporations were rendered insolvent and unable to discharge their corporate liability for taxes, and in the case of Distributing and Geneva their liabilities as transferees of Overholt and Large, respectively. Except to the extent conceded otherwise by the respondent, as stated above, we conclude that the petitioners are transferees, direct or indirect, of the assets respectively received by them to the extent of the value of such assets at the time of their receipt as indicated in our findings of fact, in respect of the taxes-of the corporation of which they were respectively transferees, direct or indirect.
In the recomputations of the liabilities of the petitioners to be submitted under Rule 50, effect will be given to the stipulation of the parties which has been set out in our findings of fact.
Eeviewed by the Board.

Decisions will he entered under Rule 50.

 (b) Exchanges solely in kind..—
*******
(4) Same — Gain of Cokpoeation. — No gain or loss shall be recognized if a corporation a party to a reorganization exchanges property, in pursuance of the plan of reorganization, solely for stock or securities in another corporation a party to the reorganization.

 (g) Distribution of Stock on Reorganization. — If there is distributed, in pursuance of a plan of reorganization, to a shareholder in a corporation a party to the reorganization, stock or securities in such corporation or in another corporation a party to the reorganization, without the surrender by such shareholder of stock or securities in such a corporation, no gain to the distributee from the receipt of such stock or securities shall be recognized.

 (5) Transfer to corporation controlled by transferor. — No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation, and immediately after the exchange such person or persons are in control of the corporation; but in the case of an exchange by two or more persons this paragraph shall apply only if the amount of the stock and securities received by each is substantially in proportion to his interest in the property prior to the exchange.

 SEC. 276. EXCEPTIONS.
* * * * * * *
(c) Collection After Assessment. — Where the assessment of any income tax imposed by this title has been made within the period of limitation properly applicable thereto, such tax may be collected by distraint or by a proceeding in court, but only if begun (1) within six years after the assessment of the tax, or (21 prior to the expiration of any period for collection agreed upon in writing by the Commissioner and the taxpayer before the expiration of such six-year period. The period so agreed upon may bo extended by subsequent agreements in writing made before the expiration of the period previously agreed upon.

 SEC. 607. EFFECT OF EXPIRATION OF PERIOD OF LIMITATION AGAINST united STATES.
Any tax (or any interest, penalty, additional amount, or addition to such tax) assessed or paid (whether before or after the enactment of this Act) after the expiration of the period of limitation properly applicable thereto shall be considered an overpayment and shall be credited or refunded to the taxpayer if claim therefor is filed within the period of limitation for filing such claim.